**L. B. McFARLAND, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17697.**

United States Court of Appeals
Fifth Circuit.

Jan. 7, 1960.

John W. Muskoff, Jacksonville, Fla., for appellant.

John E. Palmer, Asst. U. S. Atty., E. Coleman Madsen, Chief Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

L. B. McFarland, appellant, with Andrew Tucker and Leila Mae Davis, was charged with: (1) possession of an unregistered distillery, in violation of 26 U.S.C.A. § 5174; (2) carrying on the business of a distiller, in violation of 26 U.S.C.A. § 5606; and (3) making and fermenting 4000 gallons of mash, in violation of 26 U.S.C.A. § 5216. The jury found the appellant McFarland guilty only on the count of illegal possession. On this appeal McFarland complains of the trial court's failure to grant his motion for acquittal.

In determining if the evidence was sufficient to allow the case to go to the jury we must view the evidence in the light most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. We affirm.

The government's evidence consisted of the testimony of the arresting agents, three federal agents for the Alcohol and Tobacco Tax branch of the Internal Revenue Service and an agent of the Florida State Beverage Department. They testified that shortly before November 14,

1955, government agents found an illicit distillery concealed in a sink-hole, a hollow, in a section of Hamilton County, Florida, characterized by scrub pines and abandoned fields. The distillery was not visible from the field. A two-wheeled rutted road led to the sink-hole. The nearest house was three-quarters of a mile away. McFarland lived twenty or twenty-five miles from the distillery. The distillery consisted of five 1000-gallon stills, two condensers and reach-pots, two flakestands, and two pitcher pumps. There were 4000 gallons of mash in the vats. On November 14 the mash was still "green", that is, it had not reached its peak alcohol content.

November 14, 1955, three federal agents and three state agents were hiding near the still when, around 11:30 p. m., McFarland, Leila Mae Davis, and Andrew W. Tucker drove up in a new truck and stopped forty yards from the still. McFarland was the owner and driver of the truck. Tucker got out, took a flashlight, and walked down to the distillery. He whistled. After hearing the whistle, McFarland drove the truck down to the distillery. Tucker and McFarland then began unloading empty jugs from the truck. At this point the agents appeared. Tucker was caught at the truck. McFarland attempted to escape, ran a short distance, fell, and was caught by one of the agents. There were two empty five-gallon jugs in the cab of the truck. A pistol was found in the glove compartment. There were thirty-three empty jugs in the back of the truck. McFarland, Tucker, and Leila Mae Davis were arrested. The truck was seized.

One of the federal agents asked McFarland when the mash would be ready for distillation. He replied, "Not 'till next Monday". McFarland also told this agent that he had been receiving most of the whiskey that had been made at the still for the last five weeks. The next day, on their way to Jacksonville, Florida, McFarland told the same agent, "You caught a truck with bells on it". The agent did not understand, so McFarland explained that he had paid $1900 for the truck and there were no liens against it.

McFarland testified that he was a hard working farmer, did not own the still, and did not furnish the money to operate it. He denied telling the agent when the mash would be ready for distillation. He denied the statement that he had received the output of the still.

McFarland's defense is that he was just hauling jugs to the still and was not in possession of the still. He testified that the distillery and the jugs he was hauling belonged to a Mr. Harrel, a person otherwise unidentified, who had asked him to haul some empty jugs and some coke to the distillery. On cross-examination, McFarland stated that he had visited the distillery twice before the night of his arrest. He explained that on the night of the arrest he sent Tucker down to the still with the flashlight because he was not sure of the location of the still. Tucker's whistle indicated that they were at the right place.

The defense claims that if McFarland had owned or possessed the still he would not be buying the distilled whiskey. The difficulty with this argument is that the record does not substantiate the claim that McFarland was buying from the still. The government agent testified that McFarland stated that he had "received most of the whiskey which had been made at the still for the last five weeks". It does not seem unreasonable to us that the jury might infer that receiving the end product of the illegal operation for five weeks indicated ownership and possession of the still. McFarland argues also that use of the new truck to deliver the jugs is inconsistent with guilt because rarely, if ever, is new equipment used around a still. We are not impressed with this argument. But even if both of the arguments were valid, they are arguments for the jury, not an appellate court. They involve reasonable inferences the jury might draw or not draw from the evidence.

■■ It is not the function of an appellate court to weigh the evidence anew

or to pass on the credibility of witnesses. And it is not necessary that the evidence be wholly inconsistent with every conclusion except that of guilt, provided the evidence is substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Vick v. United States, 5 Cir., 1954, 216 F.2d 228; United States v. Giuliano, 3 Cir., 1959, 263 F.2d 582.

■ Possession of a still is not the same as possession of a hat or a ring or a nickel. We accept as correct the trial judge's definition of possession in his charge to the jury:

"Possession of an unlawful still means that the defendant must have some dominion over the property, or some extrinsic circumstance that gives him the right to possess which includes control. It means having, holding or detention of property in one's own power or command. Ownership, whether rightful or wrongful, is not necessary to establish possession. ¶Possession may be defined as having personal charge of, or exercising the rights of management or control over the property in question. Mere presence at the scene of an unlawful distillery with nothing more doesn't constitute possession."

■ There is no doubt that mere presence at a still is not enough in itself to constitute possession of the still. There is no doubt that flight is not enough in itself to create a presumption of guilt. But presence at a still in the dead of night, flight, knowledge of the location of a well-concealed still, knowledge of the operations (when the mash would be ready for distillation), control over the still (no others were present except in a subordinate capacity), control (purchase?) of the output, admissions of previous visits to the still, and other evidence pointing to McFarland's relation to the still were enough for the jury to infer that he had control and custody to the extent sufficient to add up to possession.

Appellant relies on Vick v. United States, 5 Cir., 1954, 216 F.2d 228 to support the argument that the defendant's motion for acquittal should have been granted. In the Vick case, the only evidence of guilt was that the defendant was sitting on the ground about ten or fifteen feet from the distillery and attempted to run away from the officers. The court held that mere presence at or near an unregistered distillery is not sufficient to sustain a conviction. That is not this case. Vick was not working around the still; McFarland was unloading empty jugs. Vick had never been observed at the still prior to the raid; McFarland admits two prior visits. There was no evidence that Vick was receiving any of the liquor from the still; McFarland stated that he received what the still had produced in the five weeks prior to the raid. There was no evidence that Vick knew anything about the operation of the still; McFarland knew the date mash would be ready for distillation. Vick was a hunter who had just stopped at the still to talk and have a drink; the jury could well have believed Vick's explanation of his presence at the still. McFarland's explanation that he was just hauling empty jugs stretches the imagination. The jury chose not to believe it, and we cannot say they erred. McFarland's contact with the whole operation was much closer than one hired only to haul jugs. McFarland's presence also differs from Vick's in that Vick's presence did not contribute to the possession or operation of the illegal still.

The Court has read all of the cases cited by the appellant.[1] It would serve

1. Chadwell v. United States, 6 Cir., 1958, 260 F.2d 257; Seawell v. United States, 4 Cir., 1957, 243 F.2d 909; Spencer v. United States, 5 Cir., 1956, 239 F.2d 5; Carter v. United States, 5 Cir., 1952, 194 F.2d 748; Icenhauer v. United States,

5 Cir., 1951, 187 F.2d 663; United States v. David, 7 Cir., 1939, 107 F.2d 519; Crabb v. United States, 10 Cir., 1938, 99 F.2d 325; United States v. Dibella, 2 Cir., 1928, 28 F.2d 805; Seiden v. United States, 2 Cir., 1926, 16 F.2d 197. In

no purpose to review in this opinion the evidence in each of these cases. We hold° that the evidence in the instant case was sufficient for the jury to conclude that the defendant had possession of the unregistered still.

Judgment is

Affirmed.