**Walter T. MARKS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19541.**

United States Court of Appeals Fifth Circuit.

Nov. 23, 1962.

---

William C. O'Kelley, O'Kelley & Hopkins, Atlanta, Ga., for appellant.

Bobby C. Milan, Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., Walter E. Byerly, Atty., Food & Drug Div., Dept. of Health, Education and Welfare, for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and JOHNSON, District Judge.

JOHNSON, District Judge.

Walter T. Marks, the appellant, was convicted on five counts of a ten-count criminal information filed by the United States charging him with specific violations of Title 21 U.S.C. § 331(k).[1] Each count charges that on different occasions the appellant caused an act to be done with respect to a drug while it was being held for sale after shipment in interstate commerce—in effect, refilling a prescription without the authorization of its prescriber as required by Title 21 U.S.C. § 353(b) (1) (B), which resulted in the misbranding of the drug.[2]

Typical of the separate charges in the criminal information for which appellant was convicted was Count 2:

"The United States Attorney further charges:

"That prior to January 6, 1960, a number of Dexedrine Sulfate tablets, a drug within the meaning of 21 U.S.C. 353(b) (1) (B), were shipped in interstate commerce into the State of Georgia in a bottle labeled in part as follows:

"CAUTION—Federal law prohibits dispensing without prescription.

"That thereafter, on or about January 6, 1960, and while a number of tablets of said drug were being held for sale after shipment in interstate commerce, as aforesaid, at Thrifty Pharmacy, 474 Boulevard, Northeast, Atlanta, Georgia, Walter T. Marks, an individual, doing business as Thrifty Pharmacy, the defendant herein, did, at Atlanta, Georgia, within the Atlanta Division of the Northern District of Georgia, cause a number of tablets of said drug to be dispensed in a bottle to one Vitchel W. Pedigo, upon his request for a refill of a written prescription, dated September 22, 1959, without obtaining authorization by the prescriber;

"That displayed upon said dispensed bottle was certain labeling which

---

1. The record reflects that Marks and Edward B. Roberts were jointly charged in the information in Counts 1, 3, 7, 9, and 10. The trial court was informed that Roberts was deceased when the case was called for trial, and the Government abandoned the counts in which Roberts was charged. The case against Marks, on Counts 2, 4, 5, 6, and 8, was tried without a jury.

2. Section 331, Title 21 United States Code:
"The following acts and the causing thereof are prohibited:
\* \* \* \* \*
"(k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect

to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded."

Section 353(b) (1) (B), Title 21 United States Code:
"(b) (1) A drug intended for use by man which—
\* \* \* \* \*
"(B) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug \* \* \*."

consisted, among other things, of the following printed and graphic matter:

"THRIFTY
PHARMACY
474 Boulevard N.E. Atlanta, Ga.
Mr. Pedigo 1-4-60
One tablet three times
a day.

"That said act of causing the dispensing of said drug as aforesaid was an act caused to be done by said defendant contrary to the provisions of 21 U.S.C. 353(b) (1), which resulted in said drug in said dispensed bottle being misbranded while held for sale, in violation of Title 21, United States Code, Section 331 (k)."

Briefly, the evidence reflected that a physician issued a prescription to a Government agent by the name of Pedigo in September of 1959 for 50 Dexedrine tablets. No refill was authorized. Pedigo testified that he received this prescription, had it filled at appellant's pharmacy on September 24, 1959, and that on January 4, 1960, he returned to the appellant's pharmacy, and presented the empty bottle for refilling; whereupon, appellant, after receiving the bottle, went into the prescription department and returned momentarily with tablets in a tablet box. On January 6, 1960, Pedigo, still without a prescription, returned to the same store and received from the appellant additional tablets in a bottle. The appellant was not a registered pharmacist. The tablets received upon these occasions from the appellant were sealed in a vial by Pedigo and, after being marked by him for identification, were turned over to the sample custodian for the Food and Drug Administration in Atlanta. Pedigo, in addition to dating and signing, marked the sample that formed the basis for Count 2 of the criminal information as "Sample No. 71-965P." The chemist from the Atlanta office of the Food and Drug Administration testified that he received from the sample custodian sealed sample number 71-965P, that he initialed the sample,

broke the seal, made a chemical analysis of the tablets, and found them to be d-amphetamine sulfate tablets of the five milligram variety. Part of sample number 71-965P was taken by the Atlanta chemist, given the same number of 71-965P, sealed, and forwarded to the microanalyst of the United States Food and Drug Administration in Washington, D. C. This sample was received in Washington intact as marked, with the seal unbroken. The microanalyst testified that the tablets were manufactured in Philadelphia, Pennsylvania, and were d-amphetamine sulfate tablets of the five milligram variety.

The purchase, identification, and handling of the drugs which form the basis for Counts 4, 5, 6, and 8 was essentially the same as just related as to Count 2, with the exception that the drugs involved were meprobomate, commonly known as Equanil or Milltown; these drugs were also manufactured in Philadelphia, Pennsylvania. The testimony was without dispute that meprobomate was a "new" drug, subject to the new drug application requirements of the Federal Food, Drug and Cosmetic Act, which limits the drug to use by, or under the supervision of, a qualified physician.

Testimony with reference to the drug d-amphetamine sulfate, which formed the basis for Count 2, showed that the drug is dangerous, is to be prescribed only by a qualified physician and usually in instances where the physician desires to produce a depression of the central nervous system of the patient; that dosage varies with the individual; and that the drug should only be used strictly in accordance with the directions of the prescribing physician. This testimony, together with other testimony along the same line, leaves no doubt in the mind of this Court that d-amphetamine sulfate is a toxic drug with a potentiality for harmful effect and is not safe for use except under the supervision of a practitioner licensed by law to administer such drug.

The appellant claims, first, that the evidence was not sufficient to justify

his conviction upon either count and, second, that the evidence failed to properly identify, trace, and connect the exhibits which were introduced that purported to be drugs purchased from appellant and analyzed and testified to by the chemists. From a careful study of the record and an examination of the several exhibits which were identified and admitted in evidence by the trial court, we hold that neither contention is well taken.

The reference to different statutes necessary in the prosecution of a "misbranding" case unduly confuses the understanding of a case without a proper analysis. Such prosecutions involve nothing more than a claim by the Government that a defendant-druggist without the authorization of the issuing physician has refilled a prescription of a drug which falls into the prohibited class. United States v. Carlisle, 234 F.2d 196 (CCA 5, 1956).

■ We have given the fullest effect possible to the contention of the appellant that the evidence was insufficient to convict. We can find no real basis for such a contention. In reviewing the evidence where such contention is made, the evidence must be viewed in the light most favorable to the Government. McFarland v. United States, 273 F.2d 417 (CCA 5, 1960).

■ The contention of appellant, ably made and presented by his counsel, with reference to the tracing, identification, and connection of the drugs to appellant must also fail. While it is true that the *printed* record fails to disclose any evidence which properly connects the drugs as testified to and admitted in evidence with the drugs purchased from appellant, this defect is remedied by an examination of the exhibits themselves. These exhibits were, of course, introduced upon the trial of the case and were available for examination and inspection of the trial judge and, presumably, were examined and inspected by him; these same exhibits were available to and inspected by the several members of this Court. For example, Exhibit 2 was the

d-amphetamine sulfate purchased by Pedigo from the appellant and marked "Sample No. 71–965P." This exhibit itself, as marked, was introduced and is now an exhibit in this case. Exhibit 11, which was that part of Exhibit 2 forwarded to Washington, was also marked "Sample No. 71–965P" and was introduced, as marked, as an exhibit in this case. All the other exhibits were similarly marked and handled. While the Government could have, and possibly should have, read into the record the numbers and identifying marks on the several exhibits, it was not necessary, and there was no error in the failure to so do. The exhibits containing the drugs that form the basis for each count were properly and sufficiently identified, traced, and connected to the appellant. There was no error in their admission by the trial judge.

The judgment of conviction upon each count as made and entered by the trial court was correct and is

Affirmed.