Roy Lee BARRETT, Jackie Hamilton Gainey and Cleveland Johns, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19574.

United States Court of Appeals Fifth Circuit.

Sept. 5, 1963.

---

Joseph H. Davis, Macon, Ga., for appellants.

William A. Davis, Jr., Asst. U. S. Atty., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and JOHNSON, District Judge.

WISDOM, Circuit Judge.

■■ The defendants-appellants raise an important issue—the constitutionality of the statutory presumptions which Section 5601(b), Title 26 U.S.C.A. establishes. These are presumptions of a defendant's possession of a still and of carrying on the business of a distiller on a showing of the defendant's unexplained presence at the site of an unregistered still. Reluctantly, because of a proper respect for Acts of Congress and because of the special competency of the legislature generally to establish rules of evidence and procedure,[1] we feel compelled to hold that these presumptions violate the due process clause of the Fifth Amendment.

About a quarter to five on the morning of March 25, 1960, Roy Barrett, Jackie Gainey, and Cleveland Johns, the defendants, drove up in a truck to an unregistered still. Gainey got out and, seeing several officers, started to run. The officers outran him and arrested him. Barrett and Johns rolled up the windows of the cab, locked the doors, and tried to back the truck out of the yard. One of the officers broke a window with his flashlight and arrested the two men. The truck carried a full cylinder of butane gas similar to eight other cylinders found at the site of the still. The still, composed of two 2250-gallon tanks, was capable of producing between 450 and 500 gallons of whiskey. At the trial the officers testified that Barrett, shortly after his arrest, said that the still belonged to all three men. They had gone to the still "to make the first run."

The defendants were convicted on three of four counts of violating the Internal Revenue Code provisions relating to illegal distilling. The first two counts charge the defendants with possessing an unregistered still and with carrying on the business of a distiller without having given the bond required by law. 26 U.S.C.A. § 5601(a)(1) and (4). Count Three charges them with carrying on the business of a distiller with intent to defraud the United States of the taxes imposed upon liquor. 26 U.S.C.A. § 5602. Count Four charges the defendants with "work[ing] in a distillery for the production of spiritous liquors upon which no sign was placed and kept, showing the name of the person engaged in the distilling and denoting the business." The trial judge directed a verdict of not guilty on this last count. The district court sentenced Barrett to one year and one day, Gainey to fifteen months, and Johns to two and one-half years in the custody of the Attorney General.

## I.

Section 5601 provides in part:

"(a) Offenses.—Any person who—

"(1) Unregistered stills.—has *in his possession* or custody, or under his control, any still or distilling apparatus set up which is not registered, as required by section 5179 (a); or

\* \* \* \* \* \*

"(4) Failure or refusal of distiller or rectifier to give bond.—*carries on the business of a distiller* or rectifier without having given bond as required by law;

\* \* \* \* \* \*

"(b) Presumptions.—

"(1) Unregistered stills.—Whenever on trial for violation of subsection (a)(1) the defendant is shown to have been at the site or place

---

1. A rule of presumption is simply a rule changing one of the burdens of proof, i. e. declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced. There is not the least doubt, on principle, that the Legislature has entire control over such rules, as it has (when not infringing the Judiciary's prerogative) over all other rules of procedure in general and evidence in particular—subject only to the limitations of the rules of Evidence expressly enshrined in the Constitution. If the Legislature can abolish the rules of disqualification of witnesses and grant the rule of discovery from an opponent, it can shift the burden of producing evidence. 4 Wigmore on Evidence § 1356 (3d Ed.1940).

where, and at the time when, a still or distilling apparatus was set up without having been registered, *such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury* (or of the court when tried without jury).

"(2) Failure or refusal of distiller or rectifier to give bond.—Whenever on trial for violation of subsection (a) (4) the defendant is shown to *have been* at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, *such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury* (or of the court when tried without jury)."

These presumptions were added to the Internal Revenue Code by the Excise Technical Changes Act of 1958, 72 Stat. 1398. According to the report of the Senate Finance Committee recommending the changes, the purpose of these provisions was to overcome the effect of Bozza v. United States, 1947, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818:

"Their purpose is to create a rebuttable presumption of guilt in the case of a person who is found at illicit distilling or rectifying premises, but who, because of the practical impossibility of proving his actual participation in the illegal activities except by inference drawn from his presence when the illegal acts were committed, cannot be convicted under the ruling of the Supreme Court in Bozza v. United States (330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818).

"The prevention of the illicit production or rectification of alcoholic spirits, and the consequent defrauding of the United States of tax, has long been rendered more difficult by the failure to obtain a conviction of a person discovered at the site of illicit distilling or rectifying premises, but who was not, at the time of such discovery, engaged in doing any specific act.

"In the Bozza case, the Supreme Court took the position that to sustain conviction, the testimony 'must point directly to conduct within the narrow margins which the statute alone defines.' These new provisions are designed to avoid the effect of that holding as to future violations." S.Rep. No. 2090, 85th Cong., 2d Sess. (1958); 3 U.S.Code Cong. & Adm. News 4395, 4580 (1958).

The difficulty the Government has in proving illicit distilling is in connecting a defendant with the particular offense with which he is charged. This difficulty results in part from the statute: each step in the process of illicit distilling is narrowly defined as a separate offense. As the Supreme Court pointed out in Bozza:

"The Internal Revenue statutes have broken down the various steps and phases of a continuous illicit distilling business and made each of them a separate offense. Thus, these statutes have clearly carved out the conduct of making mash as a separate offense, thereby distinguishing it from the other offenses involving other steps and phases of the distilling business. Consequently, testimony to prove this separate offense of making mash must point directly to conduct within the narrow margins which the statute alone defines. One who neither engages in the conduct specifically prohibited, nor aids and abets it, does not violate the section which prohibits it." Bozza v. United States, 1947, 330 U.S. 160, 163, 67 S.Ct. 645, 91 L.Ed. 818.

 There is little doubt of Congress' power in civil cases to establish a rule of law of presumptive evidence that is essentially a regulation of the burden of proof. See Mr. Justice Holmes' opinion in Casey v. United States, 1928, 276 U.S. 413, 418, 48 S. Ct. 373, 72 L.Ed. 632 and Mr. Justice Cardozo's opinion in Morrison v. People

of State of California, 1934, 291 U.S. 82, 90, 54 S.Ct. 281, 78 L.Ed. 664. When, however, the legal effect of the rule is to allow an accused person to be found guilty of a crime solely on the basis of the presumption, unless he comes forward with evidence to overcome the nonexistence of the presumed fact, the practical effect is to coerce the accused into taking the stand in spite of the Fifth Amendment provision that "No person * * * shall be compelled in any criminal case to be a witness against himself." The presumption gives short shrift to the constitutional privilege. It is all very well to say that the defendant need not take the stand: all he has to do is to come forward with evidence.[2] But should the accused exercise his constitutional privilege of remaining silent, the presumption amounts to decisive, unanswerable comment on his Fifth Amendment right not to testify. Even if an accused should take the stand, the effect of the presumption does not disappear, since the law provides that the presumption is still "sufficient evidence to authorize conviction." A person accused of a crime has more than the right to present evidence in his defense. He has the constitutional right to sit on his hands. As Justice Peaslee of the New Hampshire Supreme Court ably said:

"It is said that so long as the defendant has preserved to him the right to fully present his defense, and then have the evidence weighed, he has nothing to complain of. But the right to make defense is not the whole right secured to one charged with crime. He has also the right to insist that before he can be found guilty there must be substantial evidence upon every fact essential to the establishment of his guilt, and that this evidence shall be weighed by the jury and found sufficient to prove the case. It is his right to decline to produce any evidence and to stand solely upon the proposition that the state must prove a case against him.

\*　　\*　　\*　　\*　　\*　　\*

"The rule of the Constitution is that the defendant in a criminal case cannot be compelled to go forward.

\*　　\*　　\*　　\*　　\*　　\*

"In a criminal prosecution, nonaction of the defendant cannot be substituted for action upon the part of the state, as to any matter required to be established as a part of the state's case. Neither the burden of proof nor the burden of proceeding with any evidence to prove such case can be imposed upon the party charged with crime." State v. Lapointe, 1924, 81 N.H. 227, 123 A. 692, 696, 31 A.L.R. 1212.

▆▆▆ "[I]t is not within the province of a legislature," Justice Holmes has said, "to declare an individual guilty or presumptively guilty of a crime." McFarland v. American Sugar Refining Co., 1916, 241 U.S. 79, 86, 36 S.Ct. 498, 60 L.Ed. 899. The unquestioned policy of the criminal law has placed upon the prosecution the burden of proving beyond a reasonable doubt all facts necessary to the defendant's guilt. The Government starts with both the burden of proof and the burden of persuasion.[3] A statute which shifts either one or both of these burdens to an accused is difficult to reconcile with our hard-earned heritage of fair trials. If the shift compels an accused to come forward with an exculpatory explanation—or else, before the prosecution has made a substantial showing of probability of guilt, the presumption collides with the most fundamental canon of criminal law—the presumed innocence of the defendant. These considerations compel the courts to scrutinize closely any statutory rebuttable pre-

---

2. See 4 Wigmore on Evidence § 1356, p. 732 (3d Ed.1940).

3. Here we are not concerned with exceptions based on affirmative defenses such as insanity and self-defense. These defenses do not negative the factual elements of guilt which the prosecution must prove. See Note, Rebuttable Presumptions 55 Col.L.Rev. 527, 543 (1953).

sumption of an ultimate fact essential to the proof of a crime.[4]

▮ This brings us to the magic words, "rational connection," the touchstone by which the Supreme Court tests the validity of a statutory presumption. It is not an easy test to apply: in the nature of things any test would lack concreteness. Such a test is perhaps open to the criticism that rationality of legislation is off-limits to the judiciary. Still, it is the test we must apply. We read it as a test of *reasonableness* more than of bare *rationality:* to comply with the due process clause, proof of the fact upon which the statutory presumption is based must carry a reasonable inference of the ultimate fact presumed.

The Supreme Court first established this test in Mobile, J. & K. C. R.R. Co. v. Turnipseed, 1910, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78. Turnipseed was a civil action, but the test is applied in both civil and criminal cases. See also Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; McFarland v. American Sugar Refining Co., 1916, 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899; Minski v. United States, 6 Cir. 1942, 131 F.2d 614, affirmed Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Caudillo v. United States, 9 Cir. 1958, 253 F.2d 513, cert. den. Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373; Manning v. United States, 5 Cir. 1960, 274 F.2d 926; Annotations 51 A.L.R. 1139, 86 A.L.R.

179, 162 A.L.R. 477, 495. In Tot v. United States, 1943, 319 U.S. 463, 467, 63 S.Ct. 1241, 1243, 87 L.Ed. 1519, the Supreme Court explained what it meant by "rational connection." The Court had before it the Federal Firearms Act, 15 U.S.C.A. § 902(f). Section 2(f) of this Act made it unlawful for a person who is a fugitive from justice or who has been convicted of a crime of violence to receive a firearm shipped or transported in interstate commerce. The Act provided that "the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act." In holding that Section 2(f) violated the Due Process clause, the Court said:

> "The Government seems to argue that there are two alternative tests of validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, *if the inference of the one from proof of the other is arbitrary*

4. There is a large volume of legal writings on rebuttable statutory presumptions. See, for example, Thayer, Preliminary Treatise on the Law of Evidence at the Common Law 313–52 (1898); 4 Wigmore, Evidence § 1356, 2490–93, (3d Ed.1940); McCormick, Evidence 639–40 (1954); Bohlen, The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof, 68 U. of Pa.L.Rev. 307 (1920); Brosman, Statutory Presumptions, 5 Tul.L.Rev. 17, 178 (1930–1931); Keeton, Statutory Presumptions, 10 Tex.L.Rev. 34 (1932); Morgan, Some Observations Concerning Presumptions, 44 Harv.L.Rev. 926 (1931); Morgan, Instructing the Jury Upon Presumptions and Burdens of Proof, 47 Harv.L.Rev.

59 (1933); Hale, Necessity of Logical Inference to Support a Presumption, 17 S.Cal.L.Rev. 48 (1943); Morgan, Tot v. United States: Constitutional Restrictions on Statutory Presumptions, 56 Harv. L.Rev. 1324 (1943); Ray, Presumptions and the Uniform Rules of Evidence, 33 Tex.L.Rev. 588 (1955); Note, Constitutionality of Rebuttable Statutory Presumptions, 55 Col.L.Rev. 527 (1955); Morgan, How to Approach Burdens of Proof and Presumptions, 3 Rocky Mt. L.Rev. 34 (1953); Morgan 1 Basic Problems of Evidence 30, 33–55 (A.L.I.1954); Laughlin, In Defense of the Thayer Theory of Presumptions, 52 Mich.L.Rev. 195 (1953).

*because of lack of connection between the two in common experience.* This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is *so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts.*" (Emphasis added.)

Thus, under Tot, it is not enough that the fact proved be relevant to the ultimate fact presumed. The fact proved must carry an inference of the fact presumed. Moreover, the inference must not be "strained:" it must be so reasonably related to the fact proved as to tend to establish the defendant's guilt. For example, 18 U.S.C.A. § 659 makes it a criminal offense to have in one's possession goods knowing them to have been stolen from a carrier in interstate commerce. Under that statute evidence of a defendant's possession of recently stolen goods casts upon the defendant the burden of explaining the possession. There is a "rational connection" between an accused's possession of recently stolen property and the theft of the property. Yielding v. United States, 5 Cir. 1949, 173 F.2d 46. And see Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090. "[I]n such a case it remains true that the prosecution still has the burden of proving the accused guilty by evidence of facts and inferences fairly to be drawn from the facts proved." Government of Virgin Islands v. Torres, D.C. Virgin Islands 1958, 161 F.Supp. 699. But suppose that all the statute requires the Government to prove is that the accused was in "possession" of an article "which may be reasonably suspected of being stolen." 14 V.I.C. § 2102 (b) so provided. In Torres, Judge Maris held that the statute was invalid under the Due Process clause: "There is not such a rational connection between the facts proved by the prosecution and the

fact which the statute permits to be inferred from those facts."

■ How do subsections 5601(b) (1) and (2) fare under the "rational connection" criterion? First of all we note that the declared reason for the presumption, according to the Senate Finance Committee Report, is inconvenience of proof. Mere convenience to the Government in proving its case is not a sufficient basis for presumption. This is Tot's teaching. It is true that an accused knows why he possesses a firearm or is at a still-site, or has better means of information than the Government. In answer to this argument, the Court said in Tot:

"The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts." 319 U.S. at 469, 63 S.Ct. at 1245.

■ Section 5601(b) (1) makes mere presence of a defendant at an unregistered distillery presumptive evidence that

the still is "in his possession or custody, or under his control." A defendant's presence at a still is certainly a relevant fact, but it is not realistic or reasonable to say that such presence carries the inference of *possession* of the still. Possession of a thing such as a still involves the highly technical legal concept of dominion, control. As we pointed out in McFarland v. United States, 5 Cir. 1960, 273 F.2d 417, 419, "Possession of a still is not the same as possession of a hat or a ring or a nickel." In that case we approved the definition the district court gave to the jury:

> "Possession of an unlawful still means that the defendant must have some dominion over the property, or some extrinsic circumstance that gives him the right to possess which includes control. It means having, holding or detention of property in one's own power or command. Ownership, whether rightful or wrongful, is not necessary to establish possession. ¶Possession may be defined as having personal charge of, or exercising the rights of management or control over the property in question. Mere presence at the scene of an unlawful distillery with nothing more doesn't constitute possession." 273 F.2d at 419.

This Court has held, time and again, that "mere presence at a still site cannot support a conviction for violation of the liquor laws relative to the still." Fowler v. United States, 5 Cir. 1956, 234 F.2d 697, 699. Accord, Vick v. United States, 5 Cir. 1954, 216 F.2d 228; Cantrell v. United States, 5 Cir. 1946, 158 F.2d 517. See McFarland v. United States, 5 Cir. 1960, 273 F.2d 417. The Fourth Circuit, in a case decided after the adoption of the 1958 Amendments to Section 5601, United States v. Freeman, 4 Cir. 1961, 286 F.2d 262, 266, held that

> "We have found no cases, and none have been cited, where mere presence in the general locality of the still, without some corroborating facts or circumstances to connect the accused

with the particular still or the liquor business in general, has been held sufficient to convict one of carrying on the business of a distiller."

This absence of a natural inference of possession of a still from presence at a still distinguishes the presumption here at issue from the statutory presumption this Court upheld in Manning v. United States, 5 Cir. 1960, 274 F.2d 926. There we were dealing with Section 4744 (a) (1) of the Internal Revenue Code, which stipulates that "[p]roof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection * * *." In such cases, unlike the case at bar, possession is proved. The statute simply creates a presumption that certain possessions are unlawful. On the other hand, in the instant case only presence near an unregistered still need be proved; the crime itself—possession—is presumed.

Violation of the narcotics laws from possession of marihuana is a natural and compelling inference, for there is almost no other explanation than guilt consistent with the possession of marihuana. The Ninth Circuit, passing on an almost identical statute in Caudillo v. United States, 9 Cir. 1958, 253 F.2d 513, 517, cert. den., Romero v. United States, 357 U.S. 931, 78 S.Ct. 1375, 2 L.Ed.2d 1373, pointed this out clearly. "The difficulty with appellants' reliance on the Tot case is that it provides no precedent in this, a factually different case. The possession of a firearm or ammunition is ordinarily lawful. There exists the possibility of lawful possession of opium derivatives, or other narcotics, for they have definite therapeutic medical values and a scientific need exists for their possession by many doctors and almost every hospital in the United States. But this Court knows of no medical or scientific use to be made of marihuana, save perhaps for occasional testing, in order to make scientific com-

parisons with other narcotics, barbiturates, and amphetamines."

Marihuana is not a plant the ordinary citizen cultivates in his garden; almost no inference other than a violation of the narcotics laws can be drawn from possession of marihuana. But there are many inferences other than possession which can be drawn from presence at a still. A defendant might be a hunter who stumbled upon the still, as in Vick v. United States, 5 Cir. 1954, 216 F.2d 228. He might even be a prospective purchaser of the liquor. He might be present for any one of dozens of other equally probable reasons having nothing to do with possession. Courts should defer to legislative judgment when the legislature, drawing on its broad knowledge of society and human relationships, decrees, for example, that possession of marihuana, when proved, plus failure to produce an order form, "after reasonable notice and demand," form a proper basis for a rational inference of presumptive guilt. "But when the question is whether reasonable men may differ as to whether a given inference may reasonably be drawn from given data, the answer of a tribunal of last resort may rationally be accepted." Morgan, Note, 56 Har.L.Rev. 1324 (1943). And the courts hold, as a matter of law, that reasonable men can not infer possession from the given datum of an accused's presence at a still-site.

Since the presumption established by subsection 5601(b) (1) falls under the ban of unconstitutionality, subsection (b) (2) must, a fortiori, fall; for it makes presence at a still presumptive evidence of carrying on the business of a distiller. Certainly, there is far less ground for the probability of this inference—which, in fact, is a double one, from presence to possession to carrying on a business without bond—than there is for the first one. Neither statutory presumption is grounded upon "the normal balance of probability," Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.

We hold, therefore, that the trial judge's incorporation of the presumptions into the instruction to the jury operated to deprive the defendants of their constitutional right to due process of law.

## II.

None of the presumptions established by Section 5601(b) relate to Section 5602, which was the basis of the third count on which the defendants were convicted. In charging the jury, however, the trial judge referred to Counts two and three in almost identical language and made little or no distinction between them. He stated, "Counts two and three charge that these three defendants carried on the business of distillers of spiritous liquors, Count two saying without having given bond as required by law, and Count three saying with intent to defraud the United States of the tax imposed thereon." In the only other reference to Count three he said, "under the law a substantive offense as distinguished from a conspiracy is a violation of any statute other than the conspiracy statute, for instance, possession of distilling apparatus as charged in Count one and carrying on the business of distillers as charged in Counts two and three." We hold that the trial judge erred in not specifically instructing the jury that the presumptions related solely to Counts one and two. In view of the close connection between Counts two and three, which were uniformly treated together by the trial judge, it is unlikely that the jury could have made a distinction between the presumptions and the specific counts to which they related.

## III.

The record shows no evidence whatever of intent to defraud. The conviction under Count three cannot therefore be supported.

## IV.

The only question remaining is whether the case should be remanded for a new trial because, aside from the presump-

tions, there is sufficient evidence to sustain a jury verdict of guilty.

The appellants point out that defendants were never actually working at the still, but were merely in or near the site when arrested. They rely on such cases as Vick v. United States, 5 Cir. 1954, 216 F.2d 228 and Fowler v. United States, 5 Cir. 1956, 234 F.2d 697, which we have referred to earlier in this opinion.

We find far more than mere unexplained presence at a still. Defendants drove up to an illicit distillery hidden in a swamp at 4:40 in the morning. They were carrying no rifles, fishing gear, or any other equipment which a hunter or fisherman would have with him. Rather, they were hauling in a Dodge pick-up, not the two cans of gasoline which were in evidence in Fowler, but a full tank of butane gas, identical with eight others at the still-site. When they saw the officers, they tried to escape. Moreover, two of the arresting officers testified that Barrett had admitted ownership of the still, and the owner of the property on which the still was located testified that Cleveland Johns had offered to pay him $15.00 a week if he could use the land by the swamp to "do a little business." As we said in McFarland v. United States, 5 Cir. 1960, 273 F.2d 417, 419:

> "There is no doubt that mere presence at a still is not enough in itself to constitute possession of the still. There is no doubt that flight is not enough in itself to create a presumption of guilt. But presence at a still in the dead of night, flight, knowledge of the location of a well-concealed still, knowledge of the operations (when the mash would be ready for distillation), control over the still (no others were present except in a subordinate capacity), control (purchase?) of the output, admissions of previous visits to the still, and other evidence pointing to McFarland's relation to the still were enough for the jury to infer that he had control and custody to

the extent sufficient to add up to possession."

We hold, therefore, that the record shows sufficient evidence on the first two counts to support a jury finding that the defendants were in possession of the unregistered distillery.

Jurors are practical persons. It is entirely possible that here the jurors assessed the presumptions for what they are worth or entirely ignored them. Because, however, it is impossible to know the extent, if any, to which the jury relied upon the presumptions in returning its verdict, and whether it believed all, part, or none of the evidence other than that establishing the defendants' presence at the still, we have concluded that in the interests of justice the case should be reversed and remanded for a new trial on Counts One and Two.