**Allen Eli WRIGHT, Edward Hugh Wuensche, Arnold D. Naidich, and Willard L. Richardson, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 20478.**

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1966.

Rehearing Denied March 28, 1966.

Albert Sidney Johnston, Jr., Biloxi, Miss., Clyde W. Woody, Robert L. Sonfield, C. Anthony Friloux, Jr., Houston, Tex., for appellants.

William M. Schultz, Asst. U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Woodrow Seals, U. S. Atty.,

Fred L. Hartman, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, District Judge.

CHRISTENBERRY, District Judge:

In July, 1961, the farm home of Israel Greenberg and his son Samuel, in Mount Holly, N. J., was burglarized. Included in the loot were eight United States Treasury 4% registered bonds, each having a face value of $10,000.00. A year after the burglary, in July 1962, at the Summit Hotel, in New York City, one Di Fonzo sold the bonds to Edward Hugh Wuensche for the sum of $8,000.00.

Subsequently, Wuensche learned that the bonds might be disposed of in Houston, Texas, and on July 13, 1962, he chartered a private plane which flew him to Houston. The following day, Wuensche and Allen Eli Wright flew to Laurel, Mississippi, and there met one George Simmerman, a Mississippi attorney. After meeting with Simmerman and Wright, Wuensche returned to Houston and from there went to New York, Wright remaining in Laurel with Simmerman. Simmerman and Wright, in Wuensche's absence, called on various individuals in the Mississippi Gulf Coast area, displaying the bonds, and seeking either to borrow money on them or to exchange them for other securities. Later, Willard L. Richardson, also a Mississippi attorney, with the assistance of one Millette, arranged for the pledging of the bonds to one John Walker, the arrangement being that Walker would advance $60,000.00 upon the security of the eight Greenberg bonds, which were to be endorsed to him. At the end of 10 days, Wright was to redeem the bonds for $70,000.00, and in the event that Wright was unable to redeem the bonds at the end of 10 days, they would become the absolute property of Walker, thereby giving him a profit of $20,000.00 in addition to the accrued interest on the bonds. It was part of the scheme that Wright was to pay Richardson a fee of $5,000.00, and a like fee or commission

to Millette. There was also evidence that had Simmerman succeeded in pledging the bonds he was to have received $20,-000.00.

On July 18, 1962, Millette, Richardson and one Moody flew to Houston, and on the following day Wuensche returned to that city. On that day, Suttles, a Houston financier, communicated with a Vice-President of the East End State Bank, and arranged with him for a meeting at that bank, which meeting took place on July 20th. Present at the meeting were Wright, Wuensche, Richardson and Millette. At this time, Wuensche masquerading as Samuel Greenberg forged the endorsement in that name, on the bonds, in the presence of these witnesses. The bonds were delivered to Walker, a check in the amount of $60,000.00 made out by Walker to Millette was endorsed by the latter, payable to the defendant Wright, who thereupon opened an account at the East End State Bank, deposited the check to his credit, and immediately withdrew $30,000.00.

Subsequently, an indictment in 19 counts, involving a number of individual defendants, was returned by the Grand Jury for the Southern District of Texas, Houston Division. The first count charged Wright and Wuensche with the interstate transportation of the bonds, in violation of Title 18, U.S.C. § 2314.[1] The second count charged the same defendants with receiving, concealing, selling and disposing of the bonds, in violation of Title 18, U.S.C., § 2315.[2] Counts 3 through 10, inclusive, charged the same two defendants with uttering and publishing, and causing to be published as true, the forged signature of Samuel Greenberg on the bonds, in violation of Title 18, U.S.C., § 495.[3] Counts 11 through 18 charged these two defendants with forgery of the same signature on each of the eight bonds, also in violation of Title 18, U.S.C., § 495.[4] Count 19 charged Wright, Wuensche, Joseph Di Fonzo, Arnold D. Naidich, Charles J. Guiliano, Willard L. Richardson, George M. Simmerman, James C. Suttles, William H. Grafft, and James Zimmerman with conspiracy to violate Title 18 U.S.C., §§ 495, 2314 and 2315, and violation of Title 18 U.S.C., § 371, the conspiracy statute.

Wright, Wuensche and Grafft were tried to a jury, and at the same time Richardson, Naidich and the remaining defendants were tried by the Court without a jury. The jury convicted Wright and Wuensche on all of the 19 counts in which they were charged, and acquitted

1. 18 U.S.C. § 2314 provides in pertinent part, as follows: "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud * * * Shall be fined not more than $10,000 or imprisoned not more than ten years, or both * * *."

2. 18 U.S.C., § 2315, provides in pertinent part: "Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; or * * * Shall be fined not more than $10,000, or imprisoned not more than ten years, or both. * * *"

3. 18 U.S.C. § 495 provides in pertinent part: "Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with the intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited * * * Shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

4. 18 U.S.C. § 495 provides in pertinent part: "Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money * * * shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

Grafft on the one count in which he was charged. The trial judge found Richardson and Naidich guilty on the count in which they were charged, the conspiracy count, and acquitted the other defendants tried by him. The defendant Di Fonzo entered a plea of guilty in the United States District Court for the Southern District of New York, under Rule 20.

Wright, Wuensche, Naidich and Richardson appealed their convictions. Subsequently, Naidich withdrew his appeal.

Wuensche has not filed a brief nor has any argument been made in his behalf. The government has not moved to dismiss his appeal under Rule 22 of this Court. We have carefully examined the record to determine whether his case presents any question not raised by the other appellants. We find that it does not, and we consider his appeal along with the others.

■ Appellant Wright's principal contention is that "The government failed to prove an essential element contained in all counts of the indictment, namely that the securities in question were genuine United States 4% Treasury bonds". We find this contention to be without merit. It is uncontroverted that within a few months after the theft of the bonds the government cancelled and replaced them. The bonds remained genuine obligations of the United States even after their cancellation on the records of the United States Department of the Treasury. The word genuine as applied to bonds and securities means that they are not false, forged, fictitious, simulated, spurious or counterfeit. Black's Law Dictionary, 4th Ed., p. 816. It is not claimed, nor does the evidence suggest that the bonds were counterfeit or false. The fact that the bonds were cancelled would affect their redeemability, but not their genuineness. On their face, the bonds were genuine and valid obligations of the United States. With nothing on their face to indicate that they had been cancelled, a person in good faith might purchase them and learn of their cancellation only after having presented them for redemption.

■ We turn now to the second point raised by Wright. At the trial of the case, as has been previously stated, Wright, Wuensche and Grafft were tried by the jury, and Richardson and others by the Court. It appears that at the close of the government's case, all defendants moved for judgment of acquittal, and all such motions were denied. Appellant Wright then attempted to call certain of his co-defendants to testify in his behalf concerning the substantive counts in which they were not charged. Counsel for these defendants refused to permit them to testify, whereupon none of the defendants, including Wright, presented any evidence.

After the jury returned its verdict convicting Wright and Wuensche, and acquitting Grafft, the judge entered judgment of guilty as to Richardson and Naidich, and of acquittal as to the others tried by him. Wright contends that the trial judge in denying the motions for judgment of acquittal at the close of the government's case, of those defendants whom he later acquitted on the same evidence, particularly Simmerman, Zimmerman and Suttles, and of Grafft who was acquitted by the jury, effectively denied appellant the benefit of their testimony, in violation of his Fourteenth Amendment rights under the Constitution of the United States. In support of this contention Wright argues that he had filed a pre-trial motion for severance, alleging that there was insufficient evidence against his alleged co-conspirators, and that he also requested that the co-conspirators be tried first in order that he might utilize their testimony. Manifestly, these motions were without merit, and the action of the Court in denying them was proper. To have granted the motion for severance, the Court would have had to pre-judge the case, that is to say, without having heard the evidence, and we know of no rule which gives one conspirator the right to demand that other conspirators be tried first.

In reserving decision on the motions for judgment of acquittal after the close of the government's case, the trial judge was carefully seeking to protect the rights of all of the defendants. As he stated at the time, he did not wish his rulings on the motions to influence the jury in reaching their verdict. To put it another way, the trial judge was securing to the three defendants being tried by the jury the judgment of each juror untrammelled by any inference which might have been drawn if the Court had entered judgment of acquittal as to certain defendants.

Moreover, in the state of the record at the close of the government's case, with substantial evidence having been introduced against all defendants including Grafft, the Court was required to permit the case to go to the jury.

As stated by this Court, speaking through Judge Wisdom, in McFarland v. United States, 273 F.2d 417,

"In determining if the evidence was sufficient to allow the case to go to the jury we must view the evidence in the light most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. `457, 86 L.Ed. 680."

And, further, in discussing what is necessary to withstand a motion for acquittal,

"It is not the function of an appellate court to weigh the evidence anew, or to pass on the credibility of witnesses. And it is not necessary that the evidence be wholly inconsistent with every conclusion except that of guilt, provided the evidence is substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Vick v. United States, 5th Cir., 1954, 216 F. 2d 228; United States v. Giuliano, 3rd Cir., 1959, 263 F.2d 582."

We find no error in the Court's refusal to grant the motions for acquittal at the close of the government's case.

We take up next the points raised by the appellant Richardson. First, Richardson contends that there was a failure of proof in that it was not established that he had knowledge that he conspired to commit offenses against the United States, as charged in the indictment, or that he had knowledge of the existence of the conspiracy, or that he had knowledge that the bonds had been stolen and forged. We find that there is ample evidence in the record which if believed by the Court would establish all of the elements of the offense charged.

■ Richardson's next contention is that there was a material variance between the indictment and the proof. The main thrust of his argument on this point is that the indictment charges a conspiracy to violate Title 18 U.S.C., § 2314, by selling and disposing of stolen securities while the proof shows a pledge or hypothecation of the securities for a loan of $60,000. This contention is without merit. It is true that the bonds were ostensibly pledged to Walker to secure a loan. But it was for the jury to decide from the circumstances surrounding the transaction, as established by the evidence, whether this was an hypothecation in the usual sense, or was in fact part of a scheme for disposing of the bonds with no thought of repaying the loan or recovering the bonds.

Without discussing all of these circumstances, we advert to a few which the jury had a right to consider in this connection. Is it reasonable to believe that the legal holder of $80,000 face value of government bonds would pay a $20,000 fee plus accrued interest and so-called finders' fees for a loan of $60,000 for a period of ten days? To what use could a borrower of $60,000 put such funds for a period of ten days which could possibly justify his paying such exorbitant charges?

We find there is abundant evidence to establish that whatever Walker thought the nature of the transaction to be, so far as the appellants were concerned, the so-

called loan was only a pretense and a device for disposing of the bonds and realizing cash on them.

Richardson further contends that it was not shown that the Treasury Bonds had a value of "more than" $5,000 each, or any value whatsoever. We have decided this contention adversely to appellant Richardson in disposing of appellant Wright's contention that the bonds were not genuine U. S. Government Bonds. The bonds were of $10,000 face value each, were genuine obligations of the United States, and bore every indicia of being such.

■ Another point raised by Richardson is that an exculpatory statement made by him to an agent of the Federal Bureau of Investigation was introduced in evidence; that since its falsity was not shown, the truth of the matter must be presumed and he must be acquitted.

The defendant can take nothing from the cases he relies upon in support of this contention. In some of the cases error was found in the failure of the trial court to charge the jury that the truth of any exculpating or mitigating facts embraced in the defendant's statement introduced would be presumed unless shown by the evidence to be false, and in others the court held that what the defendant said for himself out of court may or may not be believed by the jury as shown to be true or false by the other evidence, but in no case cited is there anything which even remotely suggests that the introduction of a defendant's exculpatory statement by the prosecution entitles the defendant to a judgment of acquittal.

It is for the trial court to consider the statement along with all of the evidence and determine the weight to be given it. There is no suggestion this was not done. There is no merit to this specification.

We have considered the remaining claims made by the appellants and conclude that they are without merit.

The judgments are affirmed.