**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward BROOKINS, Defendant-
Appellant.**

**No. 27067.**

United States Court of Appeals,
Fifth Circuit.

March 6, 1970.

S. Gunter Toney, Toney & Guarisco, Tallahassee, Fla., for appellant.

Floyd M. Buford, U. S. Atty., Manley F. Brown, D. L. Rampey, Jr., Asst. U. S. Attys., Macon, Ga., Walker P. Johnson, Jr., U. S. Atty., Macon, Ga., for appellee.

Before RIVES, COLEMAN, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

Edward Brookins was indicted for and found guilty of violating 26 U.S.C. §§ 5179(a) and 5601(a) (possession of a still and distilling apparatus set up); 5173 and 5601(a) (carrying on the business of a distiller without bond); 5602 (carrying on the business of a distiller with intent to defraud the government of taxes); 5180 and 5681(c) (working at a distillery upon which no sign was placed and kept); and 5205(a) (2) and 5604(a) (possession of distilled spirits in containers which failed to bear the required internal revenue stamp). The case was tried to the District Judge, without a jury. We reverse.

An agent for the Alcohol and Tobacco Tax Division testified that on January 30, 1968, he, with two other agents, was looking for a whiskey still in the woods, near a creek, about five hundred yards from the Brookins residence. He knew Brookins on sight, and in the hearing on the motion to suppress stated, over objection, that he knew Brookins to be a "major violator" of the liquor laws in that area. This knowledge seems to have been supported by at least one fairly recent conviction for such an offense, as well as upon several arrests which contributed to the unfavorable reputation of the appellant as to such activities. Two of the officers located the still and observed an individual (not Brookins) working thereat. The still was running and its water pump could be heard from a distance of fifty or sixty yards. The odor of mash was detectable for a considerable distance.

The officer posted himself at a point in the edge of the woods and adjacent to a cultivated field, approximately twenty-five yards from the still. From this observation point Brookins was seen walking through the woods, headed in a straight line for the still. He was carrying two small paper bags. He stopped when he saw the agent and was forthwith arrested. One of the paper bags, whether seized before or after the formalities, contained twenty-five corks and a plastic jug spout. The corks found in the bag fitted plastic jugs found at the still site. Eighteen of those jugs had no corks. The second bag contained a lunch. After the arrest of Brookins the other officer went to the still and arrested its operator, who pleaded guilty to the indictment returned against him.

Brookins was conducted to the still yard and given a complete *Miranda* warning, after which he stated to the officers that he was glad it was all over, that he could not sleep the previous night for fear of impending detection. He admitted that he made the still and its condenser and that he was its owner. He further stated that this was the third time the still had operated. On this particular day approximately eighty gallons of whiskey had been run off. Brookins said that the run had been delayed for about two weeks, due to the

delaying effects of cool weather on the fermentation of the mash.

The exact circumstances of the arrest can best be described by quoting the testimony of the arresting agent.

"Q All right now, I'll ask you if you saw the Defendant, Ed Brookins, while you were observing the still?

A Yes, I did.

Q And where did you see him?

A I saw him walking through the woods.

Q Now, tell us where he was walking in relation to the still and in relation to where you were?

A He was walking straight towards the distillery and he was coming —I was down beside the still— and he was coming into it from up above me.

Q Was he walking anywhere close to you or coming in the direction where you were?

A Yes, he would have passed right by me.

Q All right, what did you do when you saw Ed Brookins?

A I let him keep walking toward me.

Q Could you tell whether or not he saw you?

A He did and then he stopped walking.

Q How far away from you was he before he saw you?

A Approximately 10 yards.

Q About 10 yards?

A Yes sir.

Q And was that on a line with the distillery?

A Right; that was on line with the distillery and I was down below him.

Q If he had walked in a straight line, would he have gone by the distillery or in the yard, or where would he have gone?

A He would have walked in the still yard.

Q When he stopped and looked at you, what did you do?

A I approached him.

Q And why did you approach him?

A With the intention to arrest him.

Q *What did you intend to arrest him for?*

A *Possessing an unregistered distillery.*" [Emphasis supplied].[1]

"Q All right, you knew his house was nearby, did you not?

A Yes, I did.

Q And you knew his reputation for being in the whiskey business, didn't you?

A Yes, I did.

Q And you state you could hear the still in operation some 50 yards away when you came up on it?

A That is correct.

Q Now, you walked up to Brookins; what did you say to him or did you see him with anything?

A He was carrying two paper bags.

Q Two paper sacks?

A That's correct."

Brookins testified that he was arrested at a point which was 191 yards from the still and also denied making the incriminating statements attributed to him by the arresting officer.

Brookins contended in the court below, and argues here, that the arrest was without probable cause and therefore unlawful, with the corresponding result that his incriminating statements were inadmissible, Wong Sun v. United States,

---

1. Under the circumstances as then existing this was obviously the only possible basis for the arrest. Prior thereto there was nothing to show that Brookins was carrying on the business of a distiller or working at a distillery or in possession of distilled spirits. An unidentified person was actively engaged in these activities but he had not been arrested and there was then no known connection between him and Brookins.

371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Obviously, therefore, the crucial issue is whether there was probable cause for the arrest.

In Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959), the Supreme Court spoke as follows:

"Evidence required to establish guilt is not necessary. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035. And see Director General of Railroads v. Kastenbaum, 263 U.S. 25, 28, 44 S.Ct. 52, 68 L.Ed. 146; United States v. Di Re, supra, 332 U.S. 581, at 592, 68 S.Ct. 222, 92 L.Ed. 210; Giordenello v. United States, supra, 357 U.S. 480, at 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503. It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543. And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. Carroll v. United States, supra, 267 U.S. at pages 155–156, 45 S.Ct. at pages 285–286. This immunity of officers cannot fairly be enlarged without jeopardizing the privacy or security of the citizen. We turn then to the question whether prudent men in the shoes of these officers (Brinegar v. United States, supra, 338 U.S. at page 175, 69 S.Ct. at page 1310) would have seen enough to permit them to believe that petitioner was violating or had violated the law. We think not."

In the same case, at another point, 361 U.S. 101, 80 S.Ct. 168, the Court said:

"That philosophy later was reflected in the Fourth Amendment. And as the early American decisions both before and immediately after its adoption show, common rumor or report, suspicion, or even 'strong reason to suspect' was not adequate to support a warrant for arrest. And that principle has survived to this day. See United States v. Di Re, 332 U.S. 581, 593–595, 68 S.Ct. 222, 227, 228, 92 L.Ed. 210; Johnson v. United States, 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436; Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503. Its high water was Johnson v. United States, supra, where the smell of opium coming from a closed room was not enough to support an arrest and search without a warrant. It was against this background that two scholars recently wrote, 'Arrest on mere suspicion collides violently with the basic human right of liberty'."

This Court has consistently followed the principles enunciated in *Henry*, Wooten v. United States, 5 Cir., 1967, 380 F.2d 230, cert. denied 389 U.S. 942, 88 S.Ct. 302, 19 L.Ed.2d 294; Nicholson v. United States, 5 Cir., 1966, 355 F.2d 80, cert. denied 384 U.S. 974, 86 S.Ct. 1866, 16 L.Ed.2d 684; Miller v. United States, 5 Cir., 1966, 356 F.2d 63, cert. denied 384 U.S. 912, 86 S.Ct. 1357, 16 L.Ed.2d 365.

Of course, an arrest is not justified by what the subsequent search discloses, Henry v. United States, supra; Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436.

Stated in elementary terms, the rule is that in determining the validity of an

arrest on probable cause, the Court is dealing with "probability" and not with the "certainty" that an offense has been or is being committed, Clay v. United States, 8 Cir., 1968, 394 F.2d 281, and each case turns largely on the facts existing at the time of the arrest.

What were the facts known to the officer at the moment he arrested Brookins? He knew that there was a still in operation within five hundred yards of the Brookins home. He knew that at that very moment an unidentified person [not Brookins] was operating the still. There was a field road which began at the Brookins house and ended at the still, although portions of it had been plowed up with a farm disc harrow. The officer saw someone discing the rather large field. He knew that Brookins, within the fairly recent past, had been convicted of a liquor violation and had been charged with other violations. He had never seen Brookins at the still nor had he received credible information from a reliable source that Brookins had any connection with the still. He saw Brookins approaching the still yard but he did not know what he had in the paper bags. He simply arrested Brookins on sight, but at a time when he was directly approaching the still at a distance of twenty-five yards. He testified specifically that he arrested the appellant for "possessing an unregistered distillery".

That raises the next question, and a very difficult one: At the immediate time of arrest, was there probable cause for a prudent man "in the shoes of the arresting officer" to believe that Brookins was guilty of possessing the still?

In McFarland v. United States, 5 Cir., 1960, 273 F.2d 417, this Court discusses the elements essential to the possession of an unlawful still. We defined such possession as follows:

"Possession of an unlawful still means that the defendant must have some dominion over the property, or some extrinsic circumstances that gives him the right to possess which includes control. It means having, holding or detention of property in one's own power or command. Ownership, whether rightful or wrongful, is not necessary to establish possession. ¶ Possession may be defined as having personal charge of, or exercising the rights of management or control over the property in question. Mere presence at the scene of an unlawful distillery with nothing more doesn't constitute possession."

The opinion [Judges Tuttle, Brown, and Wisdom] went on to say:

"There is no doubt that mere presence at a still is not enough in itself to constitute possession of the still."

The opinion contains a careful analysis of our opinion in Vick v. United States, 5 Cir., 1954, 216 F.2d 228, in which we directed the acquittal of a defendant in a possession case who was sitting on the ground about ten or fifteen feet from the distillery and attempted to run away from the officers. In *Vick* it had been held that mere presence at or near an unregistered distillery is not sufficient to sustain a conviction. We pointed out in *McFarland* that Vick was not working around the still, had never been observed at the still prior to the raid, there was no evidence that Vick knew anything about the operation of the still, and the jury could well have believed [although it did not] Vick's explanation of his presence at the still. It was further pointed out that Vick's presence did not contribute to the possession or operation of the still.

On the other hand, in Monnette v. United States, 5 Cir., 1962, 299 F.2d 847, [Judges Jones, Bell, and Simpson] this Court held that an automobile parked at suspected premises and used by a known liquor violator, plus the odor of fermenting mash emanating from the premises, constituted probable cause for the issuance of a search warrant.

In the present case, however, nothing was present which was known to have been used by Brookins.

Twenty-two years ago this Court decided Matthews v. United States, 5 Cir., 1947, 177 F.2d 278, [Judges Hutcheson, McCord, and Sibley]. One of the appellants walked down a path toward the distillery and was arrested thirty or forty yards from it. He was carrying a paste-board box containing groceries. He was never shown to have been present at the distillery until arrested and taken there by the officers. These circumstances were held as a matter of law to be insufficient to show that the accused was in possession of the still or carried on the business of a distiller, with or without intent to defraud the United States, or that he worked at the still.

We are reminded, as so often held, Henry v. United States, supra, that the evidence required to support probable cause need not rise to that degree necessary to support a guilty verdict. That, however, does not answer the problem in this case. If proof of mere presence at a still, or approaching near unto it on a well defined path, cannot prove the crime then, by the same reasoning, how can it raise the probability, in the absence of anything else, that one only approaching is in possession of the still?

In Surrett v. United States [January 26, 1970] 421 F.2d 403, this Court affirmed a conviction for possessing an unregistered distillery. When the officers approached the still they saw the defendant seated in a pick-up truck, which contained 300 gallons of whiskey in full view. The truck was stuck in the sand and the defendant was "rocking" it, trying to free it. The truck was about ten feet from 127 barrels of mash. The still, although not running, was hot. It was held that inferences to be drawn from the evidence warranted the conviction. Obviously, the appellant was more than merely present.

Events taking place after the arrest, and under the compulsion of the arrest, proved Brookins guilty as charged in the indictment. The difficulty for the prosecution is that the law, which denounces the crime, also prescribes, in constitutional dimensions, the rules for arresting individuals without warrants. We are confronted with the admonition of the Supreme Court in *Henry,* supra, that

"It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest."

Certainly, the arresting officer had "strong reason to suspect" that Brookins possessed the still, but under the teachings of *Henry* that was not enough.

We are compelled to hold that this arrest was without probable cause.

It therefore follows that the confessions obtained pursuant to the arrest were inadmissible and the proof was insufficient to establish guilt of the offenses charged in the indictment, Wong Sun v. United States, supra.

The judgment of conviction will be reversed and the appellant discharged.

Reversed.

RIVES, Circuit Judge (specially concurring):

A careful examination of the record convinces me that the seizure of the two paper sacks from Brookins preceded his arrest. Nowicki approached Brookins with the intention to arrest him for possessing an unregistered distillery. However, before telling Brookins that he was under arrest, Nowicki asked him his name and he replied Ed Brookins. Nowicki then asked Brookins if he could look in the two paper sacks he was carrying and Brookins gave him the sacks. In one paper sack he found 25 corks and a severed plastic jug spout and in the other he found a lunch. Nowicki then placed Brookins under arrest and signaled to his fellow officers. That much clearly appears at the bottom of page 21 and on pages 35 and 36 of the record.

There is, and can be, no contention that Brookins surrendered the two paper sacks and their contents voluntarily, for Nowicki was in the garb of an officer and was visibly armed. Brookins' confession came after, and was in all proba-

bility induced by, the discovery of the contents of the two sacks.

Nowicki acted in an emergency. If he had allowed Brookins to continue on directly to the still, he could reasonably apprehend that the carefully planned surveillance of the still would be frustrated, the operator of the still might be warned and might possibly escape, and evidence might be destroyed. Nowicki was justified in stopping Brookins to avoid interference with the raid and with the arrest of the operator of the still.

Was he justified further in seizing the two paper sacks and their contents? On this point we do not write on a clean slate. The Supreme Court has recently stated in Sibron v. New York, 1968, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L. Ed.2d 917, that "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Again in the companion *Peters* case, the Court repeated "* * * a search incidental to a lawful arrest may not precede the arrest and serve as part of its justification." 392 U.S. at 67, 88 S.Ct. at 1905. In Chimel v. California, 1969, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Court pointedly drew the comparison between the two "stop-and-frisk" cases, Terry v. Ohio, 1968, 392 U.S. 1, 19, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889, and Sibron v. New York, 1968, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, and pointed out that a protective search for weapons might be justified as in *Terry*, while a search for evidence not limited to the objective of protection would have to be disapproved, as in *Sibron*.

It therefore appears that the seizure of the two paper sacks cannot be justified as incidental to Brookins' arrest for possessing an unregistered distillery because the seizure preceded the arrest and served as part of its justification. *Sibron* and *Peters, supra,* 392 U.S. 63, 67, 88 S.Ct. 1889, 20 L.Ed.2d 917. The seizure of the sacks cannot be justified as incidental to Nowicki's stopping Brookins to prevent him from frustrat-ing the raid and interfering with the arrest of the operator of the still (assuming that he was stopped for such purpose), because the seizure was made in order to find evidence and was not limited to the objective of protection.

True, it would appear that Nowicki acted in the emergency which confronted him as a reasonably prudent officer should act, and with a minimum of intrusion upon Brookins' privacy or invasion of his personal security. If we wrote upon a clean slate, I would say that under all of the circumstances there was no unreasonable seizure violative of the Fourth Amendment. Under the controlling authorities, however, I am forced to the conclusion that the evidence obtained as a result of the seizure was inadmissible, and I reluctantly concur in the judgment of reversal.

LEWIS R. MORGAN, Circuit Judge.

I concur in the reversal of the conviction for the reasons set forth in Judge RIVES' special concurring opinion.