**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edward BROOKINS and Jessie L. Oliver,**
**Defendants-Appellants.**

**No. 30847.**

United States Court of Appeals,
Fifth Circuit.

July 6, 1971.

Clark, Circuit Judge, concurred in part and dissented in part, and filed opinion.

S. Gunter Toney, Tallahassee, Fla., Toney & Guarisco, Tallahassee, Fla., for defendants-appellants.

William J. Schloth, U. S. Atty., Charles B. Pekor, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Appellants were convicted by a jury under an indictment in several counts charging nontax-paid liquor offenses arising from a sale by Oliver to an informer, Lena Spencer, on November 13, 1969 (in which transaction Brookins participated) and from a sale by Brookins to Lena Spencer on December 11, 1969. We reverse.

Prior to trial, on three different occasions, appellant Brookins was officially supplied with what purported to be a

copy of the indictment returned by the grand jury.[1] In two of the copies, in one or more counts, there were erasures or strikeovers by which the month "September" as the date of one or more of the alleged sales had been changed to "December." One of the copies showed as a codefendant Ben Brookins (the son of appellant Brookins), while the indictment under which the defendants were arraigned and tried showed Raymond Smith as codefendant instead of Ben Brookins.

At arraignment, again by pretrial motion, in his opening statement at trial, and by offer of evidence during trial, counsel for appellants raised the issue that the copies of the indictment were relevant to the reliability of the testimony of the informer as to the dates of the two sales transactions and the identity of the participants.

We need not consider any other grounds for admissibility of the copies than that of impeachment by a prior inconsistent statement. Appellants' counsel was correct in his theory if, first, to any material extent the allegations of fact in the copies were inconsistent with any statement made by Spencer at trial, and, second, if the allegations consisted of or in substance represented statements she had made either to the Assistant United States Attorney who drafted the copies or to someone else who in turn communicated them to the Assistant United States Attorney.

As to the first, the copies were inconsistent with Spencer's testimony. She was particularly vague and contradictory about relevant dates. She placed the time of her employment to do undercover work as November 30, 1969, which was after the date charged as that of the first sale. On inquiry by the court she changed that date to September 30 (which date was corroborated by the investigators). However, she testified that she reported to the investigators undercover buys made from Brookins during September, on the 11th or 13th, which was before she was employed and before Brookins was even made known to her. This confusion especially sharpens the significance of the changes in the copies of "September" to "December." Spencer told of numerous efforts to make buys from Brookins between December 1 and 11. The investigators corroborated November 11 and December 13 as correct dates. They did not corroborate her testimony of numerous attempts to make buys during the first half of December.[2] The informer identified both Ben Brookins and Raymond Smith as participants in one or both of the sales in which she stated she bought whiskey. Neither her testimony nor that of the investigators shed any light on why Ben Brookins was dropped as a putative defendant and Smith added in his stead.

Defense counsel directed his theory toward the expected—and actual—testimony of the informer. However, the copies also became admissible for impeachment of the investigators if, and to the extent, that the copies consisted of or represented statements made by them to the Assistant United States Attorney. If effect is given to the September date appearing on the copies before they were changed, they were inconsistent with testimony given by the investigators at the trial. Also it was shown that Spencer did not testify before the grand jury. Therefore, it may be inferred

---

1. One copy was furnished to Brookins by the United States Commissioner. Two were mailed to him from the office of the United States Attorney. There are no grand jury minutes. However, no one disputes that the copy of the indictment under which appellants were arraigned and tried was the indictment actually returned by the grand jury.

2. It was shown that Spencer assisted in making buys from a number of suspects in the same general area and over a period of several months. Her testimony was, in several respects, confusing, self contradictory and contradictory to that of the agents. In some respects, including the whereabouts of both appellants on November 13 and December 11, it was contradicted by defense witnesses.

that one or more of the investigators did so, relating either what was known to such witness personally or had been related to him by some other of the investigators or by the informer. Thus, a further possible inconsistency appeared.

To decide the question of admissibility it was necessary to determine whether, and to what extent, the copies—and the alterations made in them—reflected statements made to the Assistant United States Attorney who drafted the copies, by Spencer or by one or more investigators. It does not matter that the statements represent a third party's transcription or recollection of a prior statement, Howard v. United States, 108 U. S.App.D.C. 38, 278 F.2d 872 (1960) (commissioner's synopsis of government agent's testimony at a preliminary hearing); Clifton v. United States, 224 F.2d 329 (4th Cir. 1955) (testimony by a government agent as to a prior inconsistent statement made by a witness admitted, even though it was otherwise hearsay); Palm v. New York, N.H. & H.R. Co., 200 F.2d 67 (2d Cir. 1952) (statement by an adverse witness taken by the impeaching party's agent and a court stenographer in question and answer form, and not signed by the witness); Kesmarki v. Kisling, 400 F.2d 97 (6th Cir. 1968) (answers to interrogatories in an unrelated law suit which were neither verified nor signed by the adverse party, so long as the answers represented the response of the adverse party. Since the party had testified that these answers were not reflections of her own statements, they were held inadmissible).

Defense counsel sought permission to examine the Assistant United States Attorney outside the presence of the jury as to who had given him the facts set out in the copies and the content of such information, but the District Judge denied the request. Instead the court allowed the Assistant United States Attorney to explain, also outside the presence of the jury, that before the grand jury met he discovered that the wrong date had been inadvertently typed into the proposed indictment, and that he changed the date with a pen on one copy, which the grand jury subsequently returned as its indictment. He described the copies sent to appellant Brookins as copies of "rough drafts," on which corresponding changes had been made by typewriter. The copy showing the name of Ben Brookins as a defendant was explained to be a copy of a different indictment which was proposed but never presented to the grand jury at all. The Assistant United States Attorney assured the court that after the indictment was returned no alteration had been made in it. The District Judge stated that he accepted the statements explaining the various discrepancies and, on the basis thereof, considered the copies to be irrelevant.

Without the testimony of the Assistant United States Attorney the defense could not establish a foundation for use of the copies for impeachment purposes. Whether viewed as an erroneous application of normal evidentiary rules or of the confrontation clause of the Constitution, the court could not deny to the defendants the right to establish a predicate for admissibility. Nor could it deny the copies of any probative force (assuming they might have been shown to be admissible at all) by accepting the explanations of the Assistant United States Attorney as to the discrepancies. The jury would have been entitled to accept or reject those explanations, if made to it, and its province could not be preempted by the trial judge's confidence in the Assistant United States Attorney's reliability and the truthfulness of his explanations made to the court alone.[3]

There is no issue in this case of the right of a defendant to secure written memorials from the files of a United States Attorney in search of inconsisten-

---

3. For applicable procedure when disclosure of information is demanded of an employee of the Department of Justice, see 28 C.F.R. § 16.12 et seq.

cies. The copies were freely and officially furnished to the appellants. Nor is the issue one of rejecting the trial court's conclusion that the Assistant United States Attorney was a person of integrity whose explanation was acceptable to him.

Other contentions of the appellants— that the case was tried in the wrong division, that they were improperly denied the names and addresses of government witnesses, that cross-examination of Brookins was improper, and that the prosecutor commented on Oliver's failure to testify—are without merit.

Reversed and remanded.

CLARK, Circuit Judge (concurring in part and dissenting in part).

I concur in the final two paragraphs in the text of the majority opinion but I am compelled to respectfully dissent from the reversal of these convictions, based solely on the trial court's discretionary ruling on what I consider to be essentially a cumulative and purely a collateral evidentiary matter.

As I interpret the majority opinion, it faults the trial judge for denying the defendants the right to cross-examine the United States Attorney during pre-trial motions as to information he received from an informer in connection with the preparation of the Grand Jury's indictment. The second asserted error, necessarily dependent upon the first, is his further refusal to admit indictment copies into evidence so that date and name discrepancies between these copies and the indictment actually returned by the Grand Jury could be used by defense counsel in closing argument to the petit jury to demonstrate that the testimony of government witnesses was unreliable.

Basically I urge the majority is in error as a matter of substance. Numerous prior rulings of this court have made it clear that the defendants had no pre-trial right to even discover the name of the government's informer witness, much less to cross-examine the United States Attorney as to the substance of

conversations between that witness and himself or other government agents. The date error in the indictment copies was also apparent on the face of the original indictment and the trial judge allowed counsel for the defendants to urge the presence of this apparent change in closing arguments to the jury in order to attack the credibility of the government's proof. The only other thing the excluded documents could have shown was a variance in the use of the name of Ben Brookins instead of the name of Raymond Smith. An examination of the cross-examination of the informant on this identity issue shows no confusion to be attacked.

A second basis for my dissent concerns the procedural context within which these errors are raised, which requires an explication of some length. With apologies to the reader, I consider the details set out below appropriate, if not necessary justification for my position, since my more esteemed brothers hear a different drummer in this cause.

During the first of two separate pre-trial proceedings counsel for Brookins and Oliver initially raised the subject of the excluded indictment copies. The only concern then expressed was that counsel did not want his clients to face more than one indictment. After an explanation by the Assistant United States Attorney that the questioned indictment copies had been amended before being submitted to and returned by the Grand Jury, counsel concluded the point by then stating: "That clears that up. All right, that ends the indictment Your Honor."

The next time the question was raised was during the second pre-trial hearing session, then by the nonappealing co-defendant Lillie Bell Ellis. She moved to dismiss the indictment and the first ground of her motion was that the evidence presented to the Grand Jury against her was insufficient. She requested the Grand Jury minutes and upon being informed that no such minutes existed, she attempted to carry her

point as to insufficiency of evidence by insinuation and conjecture drawn from the fact that her name had been misspelled Willie Bell Ellis and that the date conflict existed between the actual indictment and the copies which had been given to her. Following the Supreme Court and other Circuit rulings, we have recently held that a defendant is precluded from attacking the sufficiency of evidence presented to a Grand Jury at all. *See* United States v. Gower, 447 F.2d 187 (5th Cir. 1971) [No. 30367, June 1, 1971]. The fact that any error on the Court's part in acting on these motions was harmless was reenforced at this same hearing when the government agreed to respond to a bill of particulars by supplying the location and the times when the informant in this case would testify that she had purchased illicit whiskey from the defendant Ellis.[1]

During this same final pre-trial session, counsel for Brookins and Oliver asked the Court for advice on what method he ought to follow in presenting the indictment copies through his client Brookins. Although the court at first indicated that it considered the indictment copies not pertinent or material evidence, after counsel stated that such copies could indicate that the informer was confused, the court agreed that a ruling would be made on the issue of the admissibility of the copies whenever

counsel chose to raise it. The next mention of the copy documents was by defense counsel during opening statement. When counsel stated that he expected the evidence to show the confusion in the copies received by his clients, the United States Attorney objected, the court sustained the objection and, after brief further discussion of the subject, defendants' counsel concluded his statements on the subject with: "We will present it when the *appropriate* witness gets to the stand."

Although the government presented four treasury agents in addition to the witness Spencer, no attempt was made to offer the document copies for identification or to examine any of these witnesses concerning the content of such copies or the origin of any data therein. When the informer witness, Spencer, had completed her direct examination she was skillfully cross-examined about whether she had reported to government agents at the time of her purchases of illicit whiskey. She replied in the affirmative and her testimony showed that these agents had been in the immediate vicinity at the time of both the November and December sales, although at one point she was definitely confused about the date of the first purchase as indicated by the quoted excerpts from her testimony in the margin.[2] Despite the date mistakes which the witness made during her lengthy cross-examination, counsel

---

1. Indeed, in consicring the materiality of variances between indictment and proof, the test is to determine whether substantial rights of the defendant are prejudiced, Gunzburg v. United States, 297 F.2d 829 (5th Cir. 1962), and a defendant's receipt of or failure to request a bill of particulars is pertinent in determining such prejudice, United States v. Weldon, 384 F.2d 772 (2nd Cir. 1967). Brookins and Oliver had no need for a bill of particulars since they had been supplied a corrected copy of the indictment even prior to the first pretrial hearing.

2. Q [By counsel for defendants]: Did you report to the officers that you had made a purchase of whiskey from Mr. Oliver in September of 1969?

A September? What date was that? ,
Q On September 11, 1969 or September 13, 1969?
A Yes, I did.
Q You did tell them?
A Each time I made a purchase I reported it.
Q I can't hear you?
A Each time I made a buy I reported it to Investigator, Mr. Allred.
Q Did you tell the officers that you had bought whiskey from Mr. Brookins in September, 1969?
A Yes sir, I did.
After refreshing her recollection by examining her written statement, which had previously been furnished to counsel for defendants, the witness testified that she made the first purchase of whiskey from the defendants on November 13, 1969.

was unable to develop any conflict in the witness's description of the intimate physical detail of the two purchases described in the indictment returned by the Grand Jury or in the positive in-court identifications of the appealing defendants as the persons from whom she made the purchases.

After the government completed its case and the defense proof began, the sixth defense witness was the defendant Edward Brookins. Toward the end of his direct examination Brookins was asked to identify the questioned indictment copies. He testified that one of the drafts had been handed to him by the United States Commissioner at the time of his arrest and that he had received two identical copies of the other instrument through the mails from the office of the United States Attorney prior to his arraignment. The government did not dispute the official origin of the copies. However, the defendants do not contend that either of these instruments was a true copy of the Grand Jury indictment returned in this case, nor do they contend that they were not in fact furnished correct copies of the actual indictment returned (see footnote 1 to the majority opinion, *supra*).

At the time of the proffer of each document the ground for admission was that it would bear on the credibility of the informer and that counsel could draw the inference *before the jury* that the informer was confused as to dates and the names of other persons involved. The court excluded the tendered evidence on the grounds for which it was submitted on the basis that the defendant had failed to prove that the witness Spencer was responsible for any of the mistakes in the indictment copies. Under F.R.Crim.P. 26, the principles of the common law as interpreted by the Courts of the United States in the light of reason and experience, constitute the standard for admissibility of evidence in federal criminal trials. A reference to F.R.Civ.P. 46 establishes that a party must make known to a court the action he desires *and* the grounds therefor in order to preserve any error in the court's ruling on evidentiary matters. Here, each tender was expressly grounded on providing a basis for attacking the credibility of the informer on closing argument with a document the informer had never been shown to have seen or had a part in preparing. I simply cannot view as error the court's refusal to permit a party to introduce such unconnected material in order to give an attorney a springboard to conjure up possibilities of impeachment and confusion to a jury in his closing argument—especially not when he has had and exercised the opportunity for searching cross-examination of the witness involved and has actually been able to develop a conflict in her testimony before the jury about these same matters that would have been shown by the document.

The majority suggests that Constitutional confrontation rights may have been violated in this case; however, the sole intimation that the appealing defendants wanted an opportunity to examine the United States Attorney occurred during Brookins' identification of the documents in question when the Assistant United States Attorney started to relate a telephone conversation he had had with counsel for the defendants, which provoked the remark "I object * * * I believe counsel ought to testify if he's going to try to build the record up." With or without coupling this objection to the request made by counsel for the non-appealing defendant, Ellis, during hearings on preliminary motions when he stated that he would like to ask the United States Attorney questions concerning information received from the informer, would not convince me of any court-thwarted attempt to secure sworn testimony. Astute counsel for defendants didn't raise this contention by brief or argument in this court. I further cannot agree with the majority that without the testimony of the United States Attorney the appellants could not have established a foundation for the use of the indictment copies, if they wished to introduce them

for the impeachment of the witness Spencer. Several possibilities immediately suggest themselves—first, the documents could have been tendered into evidence for identification only so that questions could have been propounded to Spencer based thereon; or, requests could have been made to call Brookins out of turn for the limited purpose of identifying the documents prior to the time that Spencer completed her testimony. Doubtless no one will be more surprised than defense counsel to see that this point has played a factor in their victory for this frequent litigant in our court.[3]

In considering whether error, if any, was harmful, other practical matters ought to be considered. The defendants had at least partial benefit of the later excluded documents at the time of their cross-examination of the witness Spencer since the documents were in their possession when they examined her. Further than that they only wanted the documents to attack her credibility in closing argument, and an examination of their closing argument as made shows that both counsel for Mrs. Ellis and counsel for the appealing defendants here took the actual indictment and emphasized to the jury that the date of September 1969, which originally appeared in the indictment, had been struck through with a pen and changed to December; and despite objection by the government, the court allowed them to pursue the argument that this change in the indictment reflected discredit on the testimony of the witness Spencer in implicating the defendants.

Thus considering the substance of the matter and the procedural context in which it all arose, the discretionary rul-

ing of the trial judge on the admissibility of these copy documents does not appear to me to be error at all. If I am wrong in this premise, I submit it was not error which carried any substantial prejudice to the rights of these defendants such as would warrant a reversal of their convictions. Cf. United States v. Miles, 445 F.2d 974 (5th Cir. 1971).

I would affirm the convictions.

---

3. Brookins' first liquor law conviction was affirmed. Brookins v. United States, 397 F.2d 261 (5th Cir. 1968), cert. denied sub nom. Houston v. United States, 393 U.S. 952, 89 S.Ct. 377, 21 L.Ed.2d 364 (1968). However, his second conviction had its appellate ups and downs. After an initial reversal, Brookins v. United States, 423 F.2d 463 (5th Cir. 1970), and the grant of a rehearing en banc, a panel petition for rehearing was sustained and the panel's prior reversal was withdrawn and the conviction was affirmed; whereupon en banc rehearing was vacated, 434 F.2d 41 (5th Cir. 1970), cert. denied 400 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971).