**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**Sam BOWERS et al., Defendants-Appellees.**

**No. 71-3106.**

United States Court of Appeals, Fifth Circuit.

April 13, 1972.

Rehearing Denied May 8, 1972.

William H. Stafford, Jr., U. S. Atty., Clinton Ashmore, Asst. U. S. Atty., Tallahassee, Fla., Robert L. Crongeyer, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellant.

J. Robert Hughes, Panama City, Fla. (Court Appointed), for defendants-appellees).

Before TUTTLE, GEWIN and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

In this liquor case, 26 U.S.C.A. § 5601, the United States is appealing the district court's order granting appellees' motion to suppress evidence seized incident to their arrest.

Two beverage agents of the State of Florida, Blysma and Russ, were patrolling along a dirt road in a rural area, looking for illegal distilling activity, when they saw "fresh travel" leading from the dirt road into a field. As they drove into the field, the officers observed a man with a shotgun running about fifty yards away. He looked toward the officers and Agent Russ was able to see that he was wearing a red sweatshirt with a parka and was heavily bearded. At first the agents thought the man was an illegal hunter, running because he thought they were game wardens. Seconds later, however, they came upon an illegal still that was in operation—smoke was emanating from it and it sounded like a "jet engine." Virtually simultaneously the agents sighted two men running at a distance of about forty to fifty yards from the still. One was carrying a rifle or shotgun and they were followed by two dogs.

Agent Russ chased the first individual the officers had seen but lost him. Agent Blysma pursued the other two across the open field adjacent to the still. He lost sight of them but then saw a dog's tail wagging above the grass. As he approached the dog, two men, Ronnie Bowers and Winston Hudson, got up and started to walk away. Blysma identified himself and asked the men to unload their gun and accompany him to the still site. They complied with both requests. Bowers and Hudson were apprehended approximately a quarter of a mile from the still about seven or eight minutes after they were first observed by the officers. Agent Blysma recognized them by their clothing and their dogs as the two men he had seen running.

After returning to the still, the agents called Griffith, a federal liquor agent, who arrived on the scene shortly. In the meantime they had noticed that someone had used a nail or other sharp object to etch "Bowers Bottling Company" on a large gas cylinder used in the operation of the still. After being apprised of what had transpired and observing the still that was by now exuding liquor, Griffith placed Bowers and Hudson under arrest. He told them they were charged with illegally possessing an unregistered still.

Bowers and Hudson asked if they could drop off their shotgun at a country store before being taken to town for arraignment proceedings. The officers consented and when the gun was taken into the store Agent Russ observed Sam Bowers, and believed him to be the same person who had escaped him earlier. Bowers was heavily bearded and was wearing a red sweatshirt with a parka. He did not have a shotgun in his possession but had shotgun shells in his pocket. Agent Griffith arrested Sam Bowers.

Appellees argue to this Court, as they did to the district court, that the evidence seized at the still site after the arrest of Hudson and Ronnie Bowers should be suppressed because (1) Agent

Griffith told appellees they were under arrest for possession of an unregistered still, 26 U.S.C.A. § 5601(a) (1), when ultimately they were indicted for carrying on the business of distilling without having given bond, 26 U.S.C.A. § 5601(a) (4); (2) the complaint presented to the magistrate charged possession —not carrying on the business; and (3) there was insufficient probable cause for arresting appellees for any offense. The district court ruled for appellees, but it is difficult for us to discern from his cryptic references to appellees' contentions and to United States v. Brookins, 5th Cir. 1970, 423 F.2d 463 (*Brookins I*), on rehearing, 434 F.2d 41 (*Brookins II*), the basis of his decision.

■ We find no merit in appellees' contention that once the arresting officer announces to a suspect that he is charged with illegal possession of a still the Government is stuck with that charge throughout the prosecution. This position has no logical basis and only a hint of legal support in the language of the dissenting opinion in *Brookins II, supra.* State and federal revenue agents, policemen, and others who make arrests are not attorneys. It is unrealistic to suggest that at the time of arrest they must tell the suspect precisely what he will ultimately be charged with. Such a rule would require not only legal expertise but omniscience. How is the arresting officer to know what crimes a grand jury will charge in its indictment that is returned months later, after the results of additional investigation have been presented to it.

In *Brookins II, supra,* the Court said that even if the arresting officer had told Brookins he was under arrest for possessing an unregistered still, "the arrest should nonetheless be held legal because probable cause existed to arrest for carrying on the business of a distiller." 434 F.2d 41, 44 n. 8. This language *directly contradicts* appellees' contention in the instant case that if the arresting officer informs the suspect he is charged with possession, the arrest is invalid unless there was probable cause

to arrest for possession, regardless of whether probable cause existed to arrest for carrying on the business.

■ Appellees' second contention, that the evidence against them should be suppressed because while the complaint charged possession they were indicted for carrying on the business, is purportedly based on a footnote in *Brookins II, supra,* 434 F.2d 41, 45 n. 12, in which the Court said: "Apparently the earliest time that exact information of the complaint against him has to be given to a person arrested by an officer without a warrant is when he is taken before a commissioner." We find no solace for appellees in this passage. In the instant case the "exact information of the complaint" was given to the suspects by the magistrate. We wholly fail to understand how appellees made the leap from this quotation to their argument that if the complaint presented to the magistrate does not state the exact charge upon which the accused are eventually tried, all evidence seized incident to a valid arrest must be suppressed.

In summary, we are unable to ascertain, and appellees have been unable to point out to us, any way in which they were prejudiced by being informed by the magistrate and arresting officer that they were charged with possessing an unregistered still when they were ultimately indicted by a grand jury under the same section of the United States Code for the closely related offense of illegally carrying on the business of a distiller without bond.

■■ Turning now to what we believe to be the crux of this case, we must decide whether there was probable cause for the warrantless arrest of appellees. In Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), the Supreme Court said of warrantless arrests:

Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause

to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

In the instant case the state liquor agents observed a still in full operation and three men running at distances of 40–75 yards (depending on which account one relies) from the area of the still. When the officers gave chase, one man continued to run and the other two lay down flat in a field, apparently to avoid detection. As this Court has said, "flight of the accused is, of course, a circumstance tending to prove consciousness of guilt." Vick v. United States, 5th Cir. 1954, 216 F.2d 228, 232.

Had the still not been in operation, had someone been discovered at the site of the still running it, or had a fourth party, who might have been the operator of the still, escaped, this case would be far more difficult. However, someone had to operate the still. Moreover, it was located in an open field so that the officers could have seen anyone who fled the site. It thus seems highly unlikely that someone other than appellees was supervising the operation of the "Bowers Bottling Company."

In support of the district court's decision appellees point out that their arrests occurred during "bird season" and that they had shotguns and dogs with them. Certainly, they argue, it could be just as reasonably inferred that they were hunters as that they were moonshiners. We agree that there is room for choice between these competing inferences. However, the choice is for the jury, not for the court on a motion to suppress.

■■ Appellees cite a number of cases, e. g., Vick v. United States, 5th Cir. 1954, 216 F.2d 228, that they contend support the district court's decision. All of these cases except Brookins, supra, deal, however, not with probable cause to arrest, the issue in the case before us, but with sufficiency of evidence to convict under 26 U.S.C.A. § 5601. An individual may not, of course, be arrested on mere suspicion, but neither must the arresting officer be in possession of sufficient evidence to ensure a conviction as appellees seem to suggest. As the Court said in Brookins I, supra, 423 F.2d 463, 466–467, "the rule is that in determining the validity of an arrest on probable cause, the Court is dealing with 'probability' and not with the 'certainty' that an offense has been or is being committed, . . . . " The constitutional requirement of probable cause for arrest serves the purpose of protecting the citizenry from unreasonable intrusions by the state, not of insuring that no innocent person will ever be arrested. We believe probable cause existed for the arrest of appellees.[1] The order of the district court is reversed, the indictment should be reinstated, and the case is remanded to the district court for trial.

1. In many probable-cause-for-arrest cases the precise point at which the arrest occurs is critical. This is not such a case. Since we have concluded that ample probable cause existed when Agent Blysma apprehended Hudson and Ronnie Bowers in the field, it is not significant whether their arrest occurred when Blysma halted them and "asked" them to return to the still or when Agent Griffith "officially" notified them they were under arrest.