206 So.2d 392 (1968)
STATE of Florida, Petitioner,
v.
William A. OUTTEN, Respondent.
No. 36368.
Supreme Court of Florida.
January 31, 1968.
*393 Earl Faircloth, Atty. Gen., and William D. Roth, Asst. Atty. Gen., for petitioner.
Robert E. Jagger, Public Defender, and Joseph P. McDermott, Asst. Public Defender, for respondent.
THORNAL, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Second District, because of an alleged conflict with a decision of this Court on the same point of law. Fla. Const. Art. V, § 4, F.S.A. See, Outten v. State, 197 So.2d 594 (2nd D.C.A.Fla. 1967).
Our problem involves a consideration of the validity of an extra-judicial confession *394 absent a so-called "constitutional advisory", and also the effect of such a confession upon a second confession buttressed by an intervening advisory as to constitutional rights.
On the morning of November 27, 1965, while patrolling the highways, Trooper E.R. Peterson of the Florida Highway Patrol, was advised by radio to watch for a blue Dodge automobile headed east on Interstate 4. He was requested to stop the car and advise the occupants, who were enroute to Gainesville, that they had left their football tickets at home in Pinellas County. While parked on the Interstate 4 median, in Hillsborough County, Trooper Peterson noticed a blue Dodge automobile passing in an easterly direction. Upon following this car, he found that it did not have the tag number of the car he was requested to stop. The trooper testified, however, that the driver of the car was looking at him in the rearview mirror and seemed quite concerned about the fact that he was being pursued. Peterson related that there were two young men in the car and that it occurred to him that the driver, who appeared extremely young, might not have a driver's license. The trooper followed the car as it turned off into an exit from the interstate. As the car stopped for a stop sign, Peterson blew his horn. He got out of his patrol car and walked up to the suspect vehicle to make a driver's license check. This was at approximately 7:30 a.m. The driver responded that he had no driver's license and that he was sixteen years old. Incidentally, he later advised that he was eighteen. At this point, Trooper Peterson requested the driver to pull over to the side of the road. It was there ascertained that the driver was one Polumbo and Outten, the respondent, was the passenger. Polumbo told Peterson that the car belonged to his brother, but he could not tell where his brother lived. He could give no local telephone numbers or local addresses for the officer to check. The trooper then called headquarters by radio and found that the license tag on the Dodge he had stopped was actually issued for a 1957 Ford. The respondent Outten could offer no identification at all, and the driver, Polumbo, had only a draft card.
Trooper Peterson placed the two under arrest for "suspicion of auto theft" and transported them to the Hillsborough County Jail. The respondent, Outten, was then charged with vagrancy. While standing at one of the "divider gates" in the jail, the respondent volunteered the admission that the car had been stolen from a used car lot in St. Petersburg. Shortly after this initial admission the respondent was taken upstairs to the interrogation room. He was then advised of his right to remain silent, that he could have an attorney present and that anything he said could be used against him in the prosecution of "future" cases. The respondent again admitted that he had stolen the car from a used car lot in St. Petersburg. This second confession was obtained between 9 a.m. and 9:18 a.m. Outten testified that he was not mistreated in any way, that he was not threatened in any manner, that he was not promised anything, and that his statements were freely and voluntarily given. He also stated that he knew of his constitutional right to remain silent because he had been informed of his right on other occasions.
At the trial without a jury on January 12, 1966, the trial judge ruled the "divider gate" confession constitutionally inadmissible because the "full scale predicate was not laid" prior thereto. However, he ruled that the second confession obtained in the interrogation room was admissible. Outten was found guilty of larceny of an automobile. On appeal, the Court of Appeal, Second District, held that the trial court was correct in refusing to admit the first confession on constitutional grounds. However, it reversed on the ground that the interrogation room confession was inadmissible because it was "tainted" by the earlier confession. We now review this decision.
*395 It should be noted that the District Court expressly approved the trial court ruling that the first confession was inadmissible because of the absence of a so-called "constitutional advisory", citing Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The State here asserts that this holding conflicts with the decision of this Court in Montgomery v. State, 176 So.2d 331 (Fla. 1965). In Montgomery we noted the specific requirements of Escobedo, and the attachment of that decision to the "facts of that particular case". We held that the elements of invalidity in the Escobedo confession were cumulative, and that the absence of any one of them would have produced a different result. These Escobedo elements will be catalogued later. At this point it suffices to note that the District Court here evidently overlooked our Montgomery interpretation of Escobedo. In the instant case, although at least two of the Escobedo elements were missing, the trial judge, with District Court approval, ruled out the so-called "divider gate" confession. All of this is clearly apparent from the District Court opinion, and the jurisdictional conflict with our decision in Montgomery thereby arises.
It is true that the State did not object to the first confession ruling of the trial judge, who, at the same time, admitted into evidence the second confession. However, the District Court did not uphold the trial court as to the first confession on the procedural ground that no objection had been made. It did so with a detailed consideration of the merits of the ruling and relied upon it as its basis for going further in holding that this first confession fatally tainted the second. This was the ultimate holding that led to a reversal of the trial court. In so doing, the District Court has elevated the trial court holding into an appellate rule of decision sufficient to activate the jurisdiction of this Court on the conflict theory. We, therefore, find jurisdictional conflict with Montgomery v. State, supra.
Respondent was tried on January 12, 1966. Escobedo was decided on June 22, 1964. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, was decided on June 13, 1966. Consequently, the trial of Outten should be measured by Escobedo standards, but not by Miranda. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).
Judged by these standards, the District Court erred in approving the trial court's ruling that the "divider gate" confession was inadmissible. Escobedo held that a confession or admission obtained from a suspect is inadmissible when all of the following elements are shown: (1) the investigation ceases to be a general inquiry and begins to focus on a particular suspect, (2) the suspect has been taken into police custody, (3) the police carry out a process of interrogation that lends itself to eliciting incriminating statements, (4) the suspect has requested and been denied an opportunity to consult with his lawyer, and (5) the police have not effectively warned him of his right to remain silent. See 17 U. Fla. L. Rev. 634 (1965). Clearly, the "divider gate" situation did not contain all of these requirements. It is true that the custodial investigation had begun to focus on the respondent, but there was no showing that a process of interrogation had been initiated. Instead, the evidence indicates that the respondent first confessed of his own volition almost immediately after arriving at the county jail. This occurred during a conversation with one officer. This was not the type of long, intensive police grilling that Escobedo condemned. Even if it were, Escobedo would still be inapplicable because the respondent did not request an attorney. There is nothing in that opinion to require that a suspect be informed of a right to counsel. This was added by Miranda. Escobedo simply requires that a suspect be allowed to see his attorney when he so requests. Here, there was no request for counsel. There could, therefore, be no denial of the right to *396 counsel. Trooper Peterson testified that he advised the respondent soon after his arrest that he did not have to say anything. Although this testimony is undisputed in the record, the District Court opinion states that the respondent was not advised of his right to remain silent. Even under this statement of the facts, however, Escobedo is still inapplicable because the respondent made no request to see an attorney.
We have regarded the decision in Escobedo, as one which was circumscribed by its particular facts. Indeed, the opinion itself suggests that the conclusion was persuasively prompted by the peculiar circumstances reflected by that record. In view of Montgomery v. State, supra, we therefore hold that the so-called "divider gate" confession was admissible in evidence, even when subjected to Escobedo's cumulative criteria. Consequently, the District Court was in error in finding that the second confession was fatally infected by a constitutional infirmity in the first. In view of this, it must be held that the trial judge properly allowed the second confession into evidence. However, even if the "divider gate" confession had been properly excluded, we have the view that it was not so afflicted by a communicable organic malady that it thereby fatally infected the second or "interrogation room" confession in view of the intervening constitutional advisory.
In striking down the second confession, the District Court relied on cases holding that if a first confession is the product of physical or mental coercion, then a subsequent confession will also be inadmissible unless it is shown that the coercive influences have been removed. Coffee v. State, 25 Fla. 501, 6 So. 493 (1889); Murray v. State, 25 Fla. 528, 6 So. 498 (1889); McNish v. State, 45 Fla. 83, 34 So. 219 (1903); Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1943), and Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1953).
The common thread running through these decisions, cited by the District Court, is the all pervading effect of coercion, either physical or psychological. The basic rationale of each case simply is that the effect of coercive influences, present at an initial confession, will presumptively continue unless clearly shown to have been removed prior to a subsequent confession. To have this contaminating effect, the first confession must be the product of an overbearing physical or mental pressure. Even then, a second confession will be admissible if it can be clearly demonstrated that the coercive pressures have terminated and freedom of will has been restored.
In the case at bar there was no coercion. Outten admitted that all of his statements were freely and voluntarily made without threats or promises. In regard to the "divider gate" admission, the trial judge simply found that there "was not sufficient advice to this man" and the "full scale predicate was not laid". We have held that he was in error in excluding this first confession. However, even if, for the sake of argument, we were to permit this ruling to stand, we would still agree with the trial judge that the so-called second confession was admissible. The respondent was not "influenced" to make the first confession. The District Court, and the trial judge, found it inadmissible merely because of procedural failures, not substantive influences. When these failures were remedied  when the "full scale predicate" was supplied  then the ensuing confessions met due process standards. There was no contaminating influence to be transposed from the first to the second. The record is clear that between the "divider gate" and the "interrogation room" Outten was fully advised of his right to have an attorney and his right to decline to say anything. He was told that anything he did say might be used against him. The cases relied upon by the District Court do not require a holding that the second confession, obtained under these circumstances, would be tainted by the lack of a constitutional *397 advisory preliminary to the first confession. For all of the reasons which we have discussed the second confession was legally obtained. The trial judge properly allowed it in evidence. The District Court should not have excluded it.
Much of the District Court opinion is devoted to a discussion of whether there was probable cause for the arrest of respondent. In Florida, a law enforcement officer has the power to arrest without a warrant when he has reasonable grounds to believe that a felony has been committed and that the person arrested committed it. Fla. Stat. § 901.15(3) (1965), F.S.A. In the forepart of this opinion we have summarized salient aspects of the evidence. We will not belabor the matter with a further analysis. Suffice it to record the view that on the showing made, Trooper Peterson not only had the power to make an arrest, he had a duty to do so. Osborne v. State, 87 Fla. 418, 100 So. 365 (1924).
The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which conviction must be based. Lemus v. State, 158 So.2d 143 (2d D.C.A.Fla. 1963). The sufficiency of the officer's knowledge is not to be judged by an analysis of the effect of each isolated circumstance. Rather, it is to be measured by the test of what a reasonable man would have believed had he known all of the facts known by the officer. Diaz v. State, 43 So.2d 13 (Fla. 1949). This rule of arrest is even more logical in this age of rapid transit, than it was in earlier years. Many criminals would be out of the jurisdiction and beyond apprehension before an arrest could be made if the officer were held to a stricter standard than that stated above. This standard strikes a balance between the public's right to have lawbreakers captured and the individual's right to be free from unreasonable detention. When two young men are stopped in a car carrying a license tag issued for another car, and they have no driver's license or logical explanation as to the ownership of the car, or their claimed local connections, it does not seem unreasonable that they should be detained until the ownership of the car can be determined. If the law had not allowed an arrest under the facts of this case, the respondent and Polumbo would most likely have been in another state before it could have been conclusively determined that the car had been stolen. In this event, an arrest might never have been made. There is nothing in the Florida Constitution or the United States Constitution to require such a result.
The District Court's decision is quashed and the cause is remanded to that court for further proceedings consistent herewith.
It is so ordered.
THOMAS, Acting C.J., and ROBERTS, DREW and ERVIN, JJ., concur.