280 So.2d 419 (1973)
David SPICY, Petitioner,
v.
CITY OF MIAMI, a Municipal Corporation, Respondent.
No. 42937.
Supreme Court of Florida.
June 27, 1973.
Rehearing Denied October 3, 1973.
Michael B. Solomon, of Theodore M. Trushin Law Offices, Miami Beach, for petitioner.
Alan H. Rothstein, City Atty., and R. Harris Turner, Asst. City Atty., for respondent.

ON REHEARING GRANTED
DEKLE, Justice.
Conflict as a basis for review on certiorari became apparent upon a close consideration of the factual situation appearing on the face of the Third District Court's opinion at 266 So.2d 101 (1972), reversing a resolution of those facts by a jury. Our quashal of a similar substitution of factual judgment by the Third District in Westerman v. Shell's City, Inc., 265 So.2d 43 *420 (Fla. 1972), and the holding in Golden Hills Turf and Country Club v. Buchanan, 273 So.2d 375 (Fla. 1973), are bases for conflict, affording jurisdiction under Fla. Const. art. V, § 3(b)(3) (1973), F.S.A.
Two City of Miami police officers during the course of their duties saw Alton Exson (petitioner's decedent) in the right front passenger side of a taxicab in a dazed, incoherent condition suffering from a head injury. There was blood on the back of his head, on the seat of the cab and the sidewalk. The police testified that at the scene (taxi) the deceased spoke "in a slow manner", did not answer coherently and his eyes were "glassy looking". "That's why I started asking his co-worker what's wrong with him." The officers did not detect any alcohol on his breath.
Decedent was transported to Jackson Memorial Hospital for an examination. The examining intern at the hospital stated that when he asked about drinking, Exson told him that he had earlier had "two drinks." The doctor "felt that he had been drinking to the extent that he had a staggering gait," although he conceded that neurological impairment to his legs from a blow on the head could also cause his staggering. The doctor had "no opinion as to whether or not he was drunk". "I can't say that he was." He recalls no conversation relaying his views to the police. Yet, the police based the required "substantial reason to believe the plaintiff was committing a misdemeanor"[1] (public drunkenness) upon the intern's later determination as to whether he was in fact drunk. This the officers cannot do. It is the officer's judgment that must be exercised. It is he who must support by his testimony the charge he makes. Here he admits that he cannot when he testifies:
"Q. You wrote up an arrest paper, you said?
A. Right, and an injury report.
Q. What was the reason you wrote up both?
A. Well, the reason I wrote up both, because I was not able to determine his problem. I felt like he was injured, I felt like he possibly could have been drunk; I didn't know which one.

Q. You did not know which one at that time 
A. Actually.
* * * * * *
"Q. Would it be a fair statement to say that after you waved goodbye to Mr. Exson leaving in the ambulance you left it entirely up to whatever doctor examined or was supposed to examine Mr. Exson regarding whether or not he was drunk?

A. Right.

* * * * * *
"Q. Besides that, did he appear to be normal?
A. Drunk or injured.
Q. Drunk or injured?
A. Drunk or injured. His condition could have been from an injury or his condition could have been from some type of alcohol." (Emphasis added)
The judge also questioned Officer Bowles concerning the substance of his testimony:
"THE COURT: He said he [officer] could not determine whether he was drunk or injured, so he said he left it up to the doctor.
You tell me [doctor] if, from your examination this man is injured. If he is injured, release him. If he is drunk, you have my arrest slip. Put him in the jail.

THE WITNESS [Bowles]: Yes.
THE COURT: Am I telling it exactly as it was?

*421 THE WITNESS: Yes, sir, exactly like it was. That's the information that I sent to the hospital."
After the examination was completed at the hospital Exson was released to the Police Department and taken to jail. It never is clear as to his arrest.[2] The following day, his condition worsened, and he was returned to the hospital. A few days later, Exson died from multiple fractures of the skull and multiple contusions and lacerations.
Exson's administrator, petitioner herein, sued the City of Miami, respondent herein, and others, under the survival statute,[3] for false imprisonment. The complaint alleged that the City by and through its police officers falsely imprisoned Exson and were thereby liable under the doctrine of respondeat superior.[4] Following a trial on the issues, the jury said the City falsely imprisoned Exson and awarded $5,000 damages.
The Third District's opinion reversed the jury's verdict on the ground that "under the circumstances reasonable men could not differ that the police officer acted reasonably." In making this decision, the DCA cited City of Miami v. Albro, 120 So.2d 23 (Fla.App.3d 1960), as controlling precedent. In Albro, the district court said if the police officer has substantial reason to believe that the person was committing a misdemeanor, the officer can arrest him. Right. BUT  as we have pointed out herein  the officer and not an intern at a later time, must have the "substantial reason" and must "believe" from observation and evidence at the point of arrest that the person was then and there committing a misdemeanor in his presence.[5] The officer cannot base his arrest upon hearsay or a subsequent determination by a third person at a different point in time.
The district court also said that "the courts cannot second guess the officer in the performance of his duty." The Third District is correct that those of us sitting on the Court cannot do so but this is not to say that a jury cannot, for indeed it is the jury which makes the factual determination of whether the officer was correct or not, where there are conflicting facts such as these, from which reasonable men could at least differ  from which in fact they would be hard put to find other than as they did in these circumstances. Indeed, the trial judge would have been well within his authority if he had directed a verdict for the plaintiff where it was so clear, and the officer admitted, that he did not know and could not determine at the scene whether the deceased was drunk or just injured; ergo, no "substantial reason." The unfortunate "drunk" might better have fallen into the hands of the Good Samaritan.[6]
*422 The question is not one of whether or not the police acted reasonably in taking the deceased to a hospital when it was so apparent that he was injured. Of course they should have done so with all haste. It is rather a question of whether they had good cause at the time they found the deceased to place him under arrest and to imprison him. The subsequent visit to the hospital was merely an interlude over which the deceased had no control in view of his arrest and head injury, and in view of his being promptly dispatched to jail after the hospital examination and placed in a "drunk tank" there until it was necessary to return him to the hospital where he died a few days later from massive hemorrhaging from multiple fractures of the skull.
The key time to be considered with respect to an arrest is that moment of arrest at the scene, as to whether there was then and there (not as thereafter may have been concluded) reasonable cause for arrest.[7] The fact was that there was no substantial reason at the scene really to know what was wrong with the unfortunate man at that point. The police officer testified three different times that he did not know at that juncture what was wrong with the man. The only subsequent event that could be related was a statement by the deceased upon inquiry by the doctor at the hospital, that he had two drinks earlier. This alone would not be a "substantial reason to believe that the person was committing a misdemeanor."
Police officers during their duties encounter persons in various conditions of sobriety and health so that they are charged with a degree of judgment of the ordinary police officer in such a situation in determining whether there is substantial reason to believe that the person involved is in the process of committing a misdemeanor, namely being drunk, and the officers here have said that they detected no odor of alcohol at the scene. It takes little imagination to understand the jury's conclusion that the officers did not act with substantial reason and to find in favor of the deceased's administrator.
Petition for certiorari is granted, the district court's decision at 266 So.2d 101 (1972) is hereby quashed with instructions to remand the cause for reinstatement of the jury's verdict for the petitioner.
It is so ordered.
ROBERTS, ERVIN, ADKINS and McCAIN, JJ., concur.
CARLTON, C.J., and BOYD, J., dissent.
NOTES
[1] City of Miami v. Albro, 120 So.2d 23, 25 (Fla.App.3d 1960).
[2] What happened next?
"A So I requested the ambulance and I made two reports. I made the type of report that he would be admitted to the hospital and I made the type of report that he would be sent to the city jail if he was drunk. I gave the ambulance driver the two reports to give to the booking officer at the hospital. If this man was found, through the doctor, to be injured, then the arrest report could be torn up. If, through the doctor, he was found to be drunk, then he could be sent to the station.
"Q Then you, personally, did not take Mr. Exson to the hospital?
"A I sent him by ambulance.
* * * * *
"Q Therefore, after you sent Mr. Exson in the ambulance you never saw him again; is that correct?
"A I never saw him again.
* * * * *
"Q Did you consider him under arrest at that moment?
"A Not necessarily, because I had to wait for the report on the doctor." (Emphasis added)
[3] Fla. Stat. § 46.021, F.S.A.
[4] Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957).
[5] Fla. Stat. § 901.15, F.S.A. Cf. State v. Perez, 277 So.2d 778 (Fla. 1973).
[6] St. Luke 10:33-34.
[7] See State v. Perez, 277 So.2d 778 (Fla. 1973), quoting from Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).