564 So.2d 510 (1990)
Carol LeGRAND and Donald Lee LeGrand, Appellants,
v.
Charles S. DEAN, As Sheriff of Citrus County, Florida, Appellee.
No. 88-1906.
District Court of Appeal of Florida, Fifth District.
May 31, 1990.
Rehearing Denied August 1, 1990.
Michael J. Keane of Baynard, Harrell, Mascara & Ostow, P.A., St. Petersburg, and Wil Florin of Carey & Florin, P.A., Clearwater, for appellants.
Julius F. Parker, Jr. of Parker, Skelding & Labasky, Tallahassee, for appellee.

ON MOTION FOR REHEARING EN BANC
GOSHORN, Judge.
We withdraw the previous opinion, dated September 21, 1989, in this case and substitute the following in its stead.
*511 The question before this court is whether the trial court erred in entering summary judgment in favor of the appellee Sheriff of Citrus County in a false arrest action.
Carol and Donald LeGrand were arrested for sexual battery of a child. The child's parents initially contacted the arresting deputy, reporting to him that the LeGrands sexually assaulted their daughter on a night their daughter had spent at the LeGrands' home with the LeGrands' daughters. The deputy contacted the Child Protection Team, arranging for a member of the team to interview the child. The interview took place at the Sheriff's Department and was videotaped. The deputy and a social worker from HRS watched the interview on a video monitor.
During the interview the child described how she was allegedly assaulted. According to the deputy's deposition, the child stated that she was awakened as Carol LeGrand fondled her. Following the incident, Carol allegedly called Donald into the room and he too fondled the child. As the child pretended to sleep, Carol allegedly again fondled her. The child claimed that Carol digitally penetrated her vagina.
Although the deputy stated that the Child Protection Team interviewer told him and the HRS worker that she believed the child was telling the truth and that the crime had in fact occurred, the interviewer stated in her deposition that she did not recall giving her opinion to the deputy. The deputy also stated he thought he had obtained an opinion on the case from an investigator with the State Attorney's Office before arresting the LeGrands. Immediately after the interview, the deputy arrested the LeGrands, although he did not have a warrant for sexual battery. The LeGrands were subsequently acquitted of these charges by jury.
The LeGrands then sued the Sheriff for false arrest. The Sheriff answered the complaint, later moving for summary judgment on the basis that he had probable cause to arrest the LeGrands. Probable cause is a defense in a false arrest action. See § 901.15, Fla. Stat. (1987); Toomey v. Tolin, 311 So.2d 678 (Fla. 4th DCA 1978). Attached to the motion were the depositions of the interviewer from the Child Protection Team and of the deputy and the deputy's affidavit. In his affidavit, the deputy stated:
1. I am Leslie Cross. I am currently employed as a Police Officer by the City of Pikesville, Tennessee.
2. On May 12, 1986, I was employed as a Deputy Sheriff by the Citrus County Sheriff's Department.
3. On the morning of May 12, 1986, [the child's parents] came to the Citrus County Sheriff's Department to report that [the mother's] daughter, had been sexually assaulted by Carol LeGrand and her husband Donald LeGrand at the LeGrand's trailer on or about March 26, 1986.
4. The [parents] advised me that [their daughter] had gone to bed at the LeGrand's trailer and was sleeping when she awoke to find Carol LeGrand attempting digital penetration of [her] vagina. [The child] stated that she was scared and pretended to be sleeping. She further stated that when Carol LeGrand was finished she called her husband Donald LeGrand into the room. When Donald LeGrand was done, Carol LeGrand allegedly attempted digital penetration of the vagina a second time.
5. I contacted the Child Protection Team at the University of Florida in Gainesville and arranged for Christine Clark to interview the victim on May 14, 1986.
6. On May 14, 1986, at approximately 4:30 p.m., Christine Clark interviewed the victim at the Sheriff's Department. The interview room at the Sheriff's Department is equipped with a two-way mirror through which interviews are videotaped.
7. I watched the entire interview of [the child]. I also videotaped the interview. During the interview, the victim described being digitally vaginally penetrated by Carol and Donald LeGrand.
8. After seeing the interview of [the child] I arrested Carol and Donald LeGrand *512 for sexual battery upon a child under the age of 12.
The trial judge found that the deputy's affidavit conclusively established probable cause for the LeGrands' arrest. We agree.
Probable cause is constitutionally required in warrantless arrest cases to protect society from unreasonable intrusions by the state. United States v. Bowers, 458 F.2d 1045 (5th Cir.), cert. denied, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972). The standard for determining probable cause to arrest is what a reasonable person would believe knowing all of the facts known to the officer. Rogers v. State, 158 Fla. 582, 158 Fla. 790, 30 So.2d 625 (1947). See also State v. Outten, 206 So.2d 392 (Fla. 1968). The standard is not to be equated with the standard of conclusiveness and probability applying to convictions based on circumstantial facts.[1]Sheff v. State, 301 So.2d 13 (Fla. 1st DCA 1974), affirmed, 329 So.2d 270 (Fla. 1976).
What facts and circumstances constitute probable cause is a pure question of law; whether they exist is a pure question of fact. City of Jacksonville v. Alexander, 487 So.2d 1144 (Fla. 1st DCA 1986). The question of whether probable cause exists is thus a jury issue only when material facts are in controversy. Glass v. Parrish, 51 So.2d 717 (Fla. 1951); see also City of Pensacola v. Owens, 369 So.2d 328 (Fla. 1979); Gause v. First Bank of Marianna, 457 So.2d 582 (Fla. 1st DCA 1984); City of Hialeah v. Rehm, 455 So.2d 458 (Fla. 3d DCA 1984), pet. for rev. den., 462 So.2d 1107 (Fla. 1985); Carson v. Brookshire, 440 So.2d 614 (Fla. 1st DCA 1983); Weissman v. K-Mart Corp., 396 So.2d 1164 (Fla. 3d DCA 1971).
In this case, there are only two potentially disputed facts. First, whether the Child Protection Team interviewer expressed to the deputy her opinion that the child was telling the truth, and second, whether the deputy obtained an opinion from an investigator in the State Attorney's Office before arresting the LeGrands. Neither fact is material to the trial court's determination that the deputy had probable cause to arrest. The deputy interviewed the alleged victim's parents. He also watched the interview of the child by the Child Protection Team investigator. The information garnered by the Sheriff was sufficient to provide him with probable cause to believe the child had been sexually assaulted. "First hand knowledge by an officer is not required; the receipt of information from someone who it seems reasonable to believe is telling the truth is adequate." Weissman, supra at 1167. The testimony of the child by itself, if presented at trial and believed by the jury, would be sufficient to sustain a guilty verdict. It necessarily follows that facts sufficient to support a conviction also support a finding of probable cause.
AFFIRMED.
DANIEL, C.J., W. SHARP, COWART, HARRIS and PETERSON, concur.
GRIFFIN, J., concurs specially with opinion, in which COBB, J., concurs.
DAUKSCH, J., dissents with opinion.
GRIFFIN, Judge, concurring specially.
I concur with the result reached in this case but my reason differs from that of the majority. I begin with the belief that the proper focus for inquiry into the propriety of granting summary judgment in this case is found in the language of section 901.15(2), Florida Statutes (1987):
A law enforcement officer may arrest a person without a warrant when: ...
(3) He reasonably believes that a felony has been or is being committed and that the person to be arrested has committed or is committing it. (emphasis added).
Although the term often used in the reported cases is "probable cause", for purposes of evaluating warrantless arrests "probable cause" means "reasonable belief". See 1 Bender's Florida Torts § 21.24[3] at 21-37 (1988). See also Spicy v. City of Miami, 280 So.2d 419 (Fla. 1973), cert. denied, 414 U.S. 1131, 94 S.Ct. 869, 38 L.Ed.2d 755 (1974); Erp v. Carroll, 438 So.2d 31 (Fla. *513 5th DCA 1983); Donner v. Heatherington, 399 So.2d 1011 (Fla. 3d DCA 1981); Toomey v. Tolin, 311 So.2d 678 (Fla. 4th DCA 1975). "Probable cause exists where the facts and circumstances, as analyzed from the officer's knowledge, specialized training and practical experience, and of which he has reasonably trustworthy information, are sufficient in themselves for a reasonable man to reach the conclusion that an offense has been committed." Cross v. State, 432 So.2d 780 (Fla. 3d DCA 1983).
The holding of the majority in this case is that, as a matter of law, the arresting officer reasonably believed that a felony had been committed and that the appellants had committed the felony solely because he had heard the complaining child tell her story. The majority reasons that, since the child's testimony alone would have been sufficient to support a conviction, if believed by the jury, it, ipso facto, must equal probable cause. I cannot agree that possession of a single piece of competent evidence by a police officer satisfies the "reasonable belief" requirement for warrantless arrests, particularly under the facts of this case.
Stated briefly, appellant's contention in this case is that the police officer failed to take any of the steps a minimally qualified and marginally competent officer would have taken to test the veracity of the complaining child's statement and that, had he taken such measures as were readily at hand, he would have learned enough to cause him not to have made this warrantless arrest. In his original dissent, Judge Goshorn recognized that the investigation in this case was "not as complete or thorough as it could have been." I do not contend the investigation had to be complete or thorough, and I certainly do not believe all the things listed by Judge Dauksch in his dissent were required to be done. Nevertheless, a trained law enforcement officer who has failed to identify exonerating evidence readily at hand cannot have a reasonable belief in guilt simply because he has possession of one item of evidence that would support a conviction. Willful ignorance and reasonable belief are two very different concepts.
In the first place, the cases indicate that the police officer has to actually have a belief that the crime was committed and that the people he proposes to arrest perpetrated the crime. Donner, 399 So.2d at 1012. Possession of one item of evidence, such as a statement from the alleged victim, does not constitute "reasonable belief" or "probable cause" if the police officer himself does not believe the allegations of the witness. Spicy v. City of Miami, 280 So.2d 419 (Fla. 1973). The officer's belief must also be reasonable under all the circumstances, which to me logically would include such factors as the availability of corroborating evidence and the time available to investigate. This is not to imply that the uncorroborated testimony of a victim of a crime, including sexual battery, cannot, standing alone, give a police officer a "reasonable belief" sufficient to justify arrest without a warrant. It certainly can. If such a witness statement is believed by the police officer and if there is no other evidence, whether corroborating or exonerating, in the time available to investigate, the police officer's belief in guilt certainly can be reasonable and his warrantless arrest of the suspect proper. This is what occurred in Lee v. Geiger, 419 So.2d 717 (Fla. 1st DCA 1982).
This case is not nearly so neat as Geiger. Here, the complainant is a sexually aware, "highly mature" 11 1/2 year old girl who claimed that approximately six weeks earlier while she was staying overnight at the home of the appellants, she and appellants' daughter (who was apparently approximately the same age) were sleeping together in a single bed. In the other twin bed in the same bedroom was the appellants' other child, also a daughter, aged 6 or 7. While the complainant feigned sleep, Mrs. LeGrand allegedly entered this room, came over to the bed, pulled down the child's panties, called her husband into the room ("Grunt come here") and then both of them took turns digitally penetrating the child for up to thirty minutes, while the child kept turning over and acting restless in an unsuccessful effort to discourage this activity. After the incident, she went back to *514 sleep. She remained in the appellants' home the rest of the weekend before returning home to her family, saying nothing about the alleged incident for several weeks. She claimed she did not report the incident to her mother any sooner because "Mom and Carol are good friends and they work together and I was afraid it would mess up their good relationship." At some unspecified point, she allegedly recounted this story to a friend who encouraged her to report it. Appellants were local residents who gave no indication they might flee, although, as the arresting officer noted, they were "bikers".
As Judge Dauksch points out in his dissent, "armed with this story alone," without doing a medical examination, without interviewing the other children present in the same bed or in the same room, without interrogating the friend to whom the disclosure was allegedly made, without asking any questions of appellants, and without inquiring about any basis for animus between the child and appellants, appellants were arrested without a warrant on a capital sexual battery charge, within a matter of three hours of the child's interview. To say this police officer's belief in appellants' guilt at the time of arrest, based only on the child's story, was reasonable and justified a warrantless arrest stretches solicitude for law enforcement too far. The investigating officer would have to do something more.
In the present case, the arresting officer claimed he did do more. He claimed he relied on the opinion of the "child protection team" expert that the child was telling the truth. He also claimed he conferred with someone in the state attorney's office about the propriety of arrest. The latter action, even if proved, would add nothing to "reasonable belief" that the appellants committed the crime. On the other hand, reliance on the "child protection team" member's opinion was important. Deputy Cross testified that the reason he made the arrest without having a medical examination performed on the child was that Christine Clark, the member of the "child protection team" who interviewed the complaining child in the present case[1] told him she "believed that the testimony was strong enough and was accurate enough". He recalled that he, Ms. Clark and another HRS case worker sat down after the two-hour videotaped interview to do a critique and that all were in agreement that they believed the incident had occurred and that the child's story was truthful.
Ms. Clark testified in her deposition that she had no specific recollection of talking to Deputy Cross after the interview but "that's the usual way I operate... . I'm making the assumption I did... ." Her "usual procedure" was to sit down with the Sheriff's Department and tell them her opinion. "[T]hen it's up to them to decide whether they're going to make an arrest... ." She is "sure [they] discussed it." Ms. Clark further testified that, based upon her interview with the child, it was indeed her opinion that an abuse had taken place at the hands of the appellants.
I can find no issue of material fact in this testimony. The appellant has attempted to create an issue of fact by reference to Ms. Clark's denial that she made a recommendation to Deputy Cross that the LeGrands be arrested.[2] Deputy Cross never testified, however, that she made a recommendation that the LeGrands be arrested; merely that she offered her opinion that the child was telling the truth and that the crime did, in fact, take place. This was indeed the position *515 she maintained throughout the criminal and civil proceedings. Ms. Clark's testimony, while vague, is corroborative of Deputy Cross; it is certainly not contradictory.
This issue is important because a law enforcement officer can "reasonably believe" such a sex crime occurred where a trained expert in this field tells the investigating officer that, in her opinion, the child is telling the truth. I said before that Deputy Cross had to do something more than just listen to the child. Accepting the opinion of Ms. Clark, based on an extensive interview, that the child was telling the truth is "something". It isn't impressive police work but it is enough to create a "reasonable belief" in appellants' guilt, sufficient to justify the warrantless arrest.
COBB, J., concurs.
DAUKSCH, Judge, dissenting.
I respectfully dissent for the reasons expressed in the original majority opinion set out below. I emphasize that in my opinion summary judgment was improper in this tort case where factual disputes exist.
The question before this court is whether the trial court erred in entering summary judgment in favor of the appellee Sheriff of Citrus County in a false arrest action. The appellants Carol and Donald LeGrand were arrested for sexual battery of a child.
The child's parents initially contacted the arresting deputy and reported to him that the LeGrands had sexually assaulted their daughter on an evening two months prior when their daughter had spent the night at the LeGrands' home with the LeGrands' daughters. The deputy contacted the Child Protection Team and arranged for a member of the team to interview the child. The interview took place at the Sheriff's Department and was videotaped. The deputy and a social worker from HRS watched the interview on a video monitor.
During the interview the child described how she was allegedly assaulted. According to the deputy's deposition the child stated that she was awakened by Carol LeGrand who was fondling her. Following the incident Carol allegedly called her husband into the room and he fondled the child. Carol again allegedly fondled the child who pretended to be sleeping at the time. The child claimed that Carol LeGrand digitally penetrated her vagina.
Although the deputy said that the Child Protection Team interviewer told him and the HRS worker that she believed the child was telling the truth and that the crime had in fact occurred, the interviewer said in her deposition that she did not recall giving her opinion to the deputy. The deputy also said he thought he had obtained an opinion on the case from an investigator with the State Attorney's office before arresting the LeGrands. The LeGrands were arrested without a warrant for sexual battery immediately after the interview.
There is no indication in the record that there was any need for an immediate arrest; no exigent circumstances are shown to exist which would warrant the arrest of the appellants before at least a cursory confirmation of the allegations was sought. The record does not disclose why this deputy failed or refused to conduct a more complete investigation. There is an affidavit in the record of a former police chief, sheriff, law enforcement commissioner and special agent, E. Wilson Purdy, which supports the position of the appellants that a more thorough investigation before arrest would have been the proper police procedure.
The LeGrands sued the sheriff for false arrest after an acquittal. The sheriff answered the complaint and later moved for summary judgment. Attached to the motion were the depositions of the interviewer from the Child Protection Team and of the deputy and the deputy's affidavit. In his affidavit, the deputy stated:
1. I am Leslie Cross. I am currently employed as a Police Officer by the City of Pikesville, Tennessee.

*516 2. On May 12, 1986, I was employed as a Deputy Sheriff by the Citrus County Sheriff's Department.
3. On the morning of May 12, 1986, [the child's parents] came to the Citrus County Sheriff's Department to report that [the mother's] daughter, had been sexually assaulted by Carol LeGrand and her husband Donald LeGrand at the LeGrand's trailer on or about March 26, 1986.
4. The [parents] advised me that [their daughter] had gone to bed at the LeGrand's trailer and was sleeping when she awoke to find Carol LeGrand attempting digital penetration of [her] vagina. [The child] stated that she was scared and pretended to be sleeping. She further stated that when Carol LeGrand was finished she called her husband Donald LeGrand into the room. When Donald LeGrand was done, Carol LeGrand allegedly attempted digital penetration of the vagina a second time.
5. I contacted the Child Protection Team at the University of Florida in Gainesville and arranged for Christine Clark to interview the victim on May 14, 1986.
6. On May 14, 1986, at approximately 4:30 p.m., Christine Clark interviewed the victim at the Sheriff's Department. The interview room at the Sheriff's Department is equipped with a two-way mirror through which interviews are videotaped.
7. I watched the entire interview of [the child]. I also videotaped the interview. During the interview, the victim described being digitally vaginally penetrated by Carol and Donald LeGrand.
8. After seeing the interview of [the child] I arrested Carol and Donald LeGrand for sexual battery upon a child under the age of 12.
The trial judge found that the deputy's affidavit conclusively established probable cause for the LeGrands' arrest and said that any circuit judge presented with the facts set forth in the affidavit would have issued an arrest warrant without hesitation.
I agree with the LeGrands that under the circumstances of this case, the deputy's investigation of the charges against them was thoroughly inadequate and that the deputy could have taken at least some of the following investigatory measures, some of which were apparently taken in the instant civil action, before making an arrest:
(1) interviewed the LeGrands;
(2) interviewed the child;
(3) requested a medical and psychological examination of the child;
(4) interviewed the other children apparently present in the same bed and in the same room with the child during the alleged incident;
(5) requested direct state attorney involvement and proceeded by information and capias rather than warrantless arrest;
(6) investigated why the child did not cry out after the alleged assault but went to sleep;
(7) investigated why the child stayed in the LeGrands' home for the remainder of the weekend without complaint;
(8) investigated why the child waited eight weeks before voicing her allegations against the LeGrands;
(9) investigated a possible motive for the child's allegations (the record indicates that the LeGrands may have gotten the child into severe trouble with her parents for making an audio tape with sexual overtones);
(10) determined why the child may have been laughing during the interview;
(11) explored the child's alleged statement during the interview that she was too tired to remember exact details of the assault;
(12) investigated the child's family history (the record indicates that she may have had five consecutive stepfathers); and
(13) determined whether there were any exigent circumstances which justified the immediate arrest.

*517 Every criminal investigation is unique as is every investigator. It is hoped that every investigator is competent and thorough in performing his duties. The extent of the pre-arrest investigation varies from case to case and I emphasize that the above enumerated suggestions should not be interpreted as requirements in every case, or any particular one. The law is clear that an arrest must be based upon probable cause. The standard for determining probable cause to arrest is what a reasonable person would have believed knowing all of the facts known to the officer. Rogers v. State, [158 Fla. 582] 30 So.2d 625 (Fla. 1947). See also State v. Outten, 206 So.2d 392 (Fla. 1968). Although the standard is not to be equated with the standard of conclusiveness and probability that applies to convictions based on circumstantial facts,1 it cannot be based upon mere suspicion. Sheff v. State, 301 So.2d 13 (Fla. 1st DCA 1974), affirmed, 329 So.2d 270 (Fla. 1976). As in the present case, probable cause may be lacking where police procedure or investigation is inadequate. See Lee v. Geiger, 419 So.2d 717 (Fla. 1st DCA 1982), rev. den., 429 So.2d 5 (Fla. 1983).
In Harris v. Lewis State Bank, 482 So.2d 1378, 1382 (Fla. 1st DCA 1986), a malicious prosecution case,2 the court found that a lack of probable cause may be established by the following:
... Where it would appear to a `cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information. A lack of probable cause may be established by proof that a criminal proceeding was instituted on facts that could as well be explained innocently... . [footnotes omitted].
Probable cause is constitutionally required in warrantless arrest cases to protect society from unreasonable intrusions by the State. United States v. Bowers, 458 F.2d 1045 (5th Cir.), cert. den., 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972). What facts and circumstances make up probable cause is a pure question of law; whether they exist is a pure question of fact. City of Jacksonville v. Alexander, 487 So.2d 1144 (Fla. 1st DCA 1986). The question of whether probable cause exists is a jury issue when the facts are in controversy. Glass v. Parrish, 51 So.2d 717 (Fla. 1951); see also City of Pensacola v. Owens, 369 So.2d 328 (Fla. 1979); Gause v. First Bank of Marianna, 457 So.2d 582 (Fla. 1st DCA 1984); City of Hialeah v. Rehm, 455 So.2d 458 (Fla. 3d DCA 1984), rev. den., 462 So.2d 1107 (Fla. 1985); Carson v. Brookshire, 440 So.2d 614 (Fla. 1st DCA 1983); Weissman v. K-Mart Corp., 396 So.2d 1164 (Fla. 3d DCA 1971).
In this case a genuine issue of material fact is presented as to the basic facts underlying the probable cause determination. First, the deputy said he relied upon another person's assertion that the child was truthful; that person does not recall making such an assertion, a question of fact remains unresolved. This fact is critical because if the deputy did not make his own determination that the child was telling the truth, but relied upon another's determination, then the assertion of his belief of existence of probable cause at the time is refuted. Second, there was only bare allegation that a crime had occurred. An expert witness, Mr. Purdy says a reasonably prudent police officer would suspect the truthfulness and investigate further. This raises a sufficient factual issue as to the believability of the police officer himself and his statement that he thought he had probable cause. An arrest based on the mere statement of a minor that she was molested under the circumstances of this case raises a question as to the sufficiency of the investigation. This deputy sheriff arrested the appellants at night, handcuffed them, jailed them, caused their children to be seized by HRS and kept for months, required them to post bail bond, and other attendant injury. All that with virtually no investigation into allegations of one of the most heinous of crimes. For these *518 reasons I find the court's entry of summary judgment in favor of the sheriff improper. See Hood v. Zayre Corp., 529 So.2d 1197 (Fla. 5th DCA 1988); Harris; Johnson v. City of Pompano Beach, 406 So.2d 1257 (Fla. 4th DCA 1981).
I would reverse.
1 Lemus v. State, 158 So.2d 143 (Fla. 2d DCA 1963).
2 I recognize the distinction between a malicious prosecution case where the plaintiff must prove the absence of probable cause, Toomey v. Tolin, 311 So.2d 678 (Fla. 4th DCA 1975), cert. dismissed, Toomey v. City of Ft. Lauderdale Police Officer, 336 So.2d 604 (Fla. 1976), and a false arrest case where the defendant must prove that probable cause existed as a defense. See also Kelly v. Millers of Orlando, Inc., 294 So.2d 704 (Fla. 4th DCA 1974).
NOTES
[1] Lemus v. State, 158 So.2d 143 (Fla. 2d DCA 1963).
[1] Ms. Clark was employed by the University of Florida Department of Pediatrics to work on the "child protection team" which, when requested by either HRS law enforcement or various other agencies, provided investigative interviews of the child, did psychological assessments on the family, provided short-term crisis intervention therapy and community education. She had three master's degrees, including one in child development and educational psychology and one in clinical social work. At the time this incident occurred it appears that she had been working with the "child protection team" for about eighteen months. She had worked with the Citrus County Sheriff's Department, and specifically appellee, on several other cases prior to this incident.
[2] I note that in her written report prepared the day after the interview, she does expressly recommend arrest of appellants.